2007-NMSC-006

153 P.3d 657

**Andy RAEL, Petitioner,**

v.

**Lane BLAIR, Warden, Respondent.**

**No. 29,717.**

Supreme Court of New Mexico.

Feb. 9, 2007.

Joseph Newton Riggs III, Natalie A. Bruce, Albuquerque, NM, for Petitioner.

Gary K. King, Attorney General, Ralph E. Trujillo, Assistant Attorney General, Santa Fe, NM, for Respondent.

## OPINION

MINZNER, Justice.

{1} Defendant Andy Rael appeals from a decision of the district court denying his petition for habeas corpus. *See* Rule 12–501 NMRA 2006; Rule 5–802 NMRA 2002. Defendant argues he was denied effective assistance of counsel during his trial because his attorney had an actual conflict of interest. We hold that an actual conflict of interest existed, because defense counsel's representation of Defendant and a State witness was contemporaneous and relevant to Defendant's trial. We conclude defense counsel should have withdrawn once he became aware of the dual representation. We reverse and remand with directions that Defendant is entitled to a new trial.

## I. BACKGROUND

{2} Defendant was convicted of five counts of trafficking a controlled substance contrary to NMSA 1978, § 30–31–20 (1990, prior to 2006 amendment) and one count of racketeering contrary to NMSA 1978, § 30–42–4 (1980, prior to 2002 amendment). On direct appeal, the Court of Appeals reversed the conviction for racketeering, affirmed the five convictions for trafficking and remanded for re-sentencing. *State v. Rael*, 1999–NMCA–068, ¶ 1, 127 N.M. 347, 981 P.2d 280. Represented by the Public Defender's Department, Defendant filed a Petition for Habeas Corpus that was denied on all grounds on February 21, 2003. Defendant then filed a pro se Petition for Habeas Corpus, but no action was taken on the Petition until attorney Joseph Riggs III entered his appearance and filed an Amended Petition.

{3} Defendant had been convicted of selling heroin and cocaine to an undercover agent in 1996. *See Rael*, 1999–NMCA–068, ¶ 3, 127 N.M. 347, 981 P.2d 280. The investigation involved a confidential informant, Clint A. Grant, who introduced Defendant to the undercover agent. *Id.* Defendant sold drugs to the undercover agent on four sepa-

rate occasions. *Id.* On one occasion Defendant sold both cocaine and heroin. *Id.* He hired counsel, who entered his appearance for Defendant on April 8, 1997.

{4} When Grant became a confidential informant, criminal charges were pending against him in two separate matters. He had been charged with aggravated assault (CR–95–799) contrary to NMSA 1978, § 30–3–2 (1963); he also had been charged with one count of trafficking controlled substances contrary to § 30–31–20 and one count of conspiracy to traffic controlled substances contrary to NMSA 1978, § 30–28–2 (1979) (CR–96–664). The same defense attorney that represented Defendant on the charges of trafficking and racketeering was appointed to represent Grant and entered his appearance in both matters on July 24, 1996. Cause number CR–95–799 ended with a Recommendation for Satisfactory Discharge from Probation and Order of Dismissal (Conditional Discharge) on May 11, 1998. With respect to the drug trafficking charges, Grant became a confidential informant in exchange for dismissal of the charges in cause number CR–96–664. Cause number CR 96–664 ended with an Administrative Order closing the case on March 13, 2000. The record indicates that Grant introduced the undercover agent to Defendant in 1996, after defense counsel was appointed to represent Grant.

{5} During preparations for trial, defense counsel thought Grant was going to be a defense witness. However, on June 16, 1997, the State filed a Supplemental Witness List listing Grant as a prosecution witness. Defense counsel learned on June 24, 1997, that Grant was the confidential informant who had introduced Defendant to the undercover agent. Defendant was convicted by jury verdicts on July 22, 1997.

{6} The Amended Petition for Habeas Corpus was denied by the First Judicial District Court, which found that the conflict of interest on which the Amended Petition relied did not prejudice Defendant's defense. The district court first announced its decision in a letter decision to counsel dated January 12, 2006, and later entered an order denying the Amended Petition on January 30, 2006.

Defendant filed his Petition for Certiorari on March 15, 2006.

{7} On certiorari, Defendant contends the district court's findings of fact are not supported by substantial evidence and its conclusions of law are erroneous. The State raises an initial, threshold question: whether this Court lacks jurisdiction because the petition for certiorari was not timely filed. *See* Rule 12–501(B) (requiring petitions for certiorari to be filed within thirty days of district court's denial of petition for writ of habeas corpus); Rule 5–802(H) (same). We address the State's jurisdictional argument first.

## II. DISCUSSION

{8} Defendant notes that on February 14, he moved for an extension of time for filing a petition for certiorari until March 15. He also notes that the district court granted the motion and extended the time for filing a petition until March 15. The State notes that there is no specific provision in the rules for extending the time for filing a petition for certiorari. *See* Rule 12–501(B); Rule 5–802(H); *see generally* Rule 12–201(E) NMRA 2005 (providing for extensions of time for filing a notice of appeal both before and after the thirty day period has run but not after sixty days from the time the appealable order is entered). *Cf.* Rule 5–104(B) NMRA 2006 (prior to Supreme Court Order No. 06–8300, Dec. 18, 2006) (providing for enlargements of time under the rules of criminal procedure for district court). Neither Rule 5–104(B) nor Rule 12–201(E) specifically address petitions for certiorari.

{9} We conclude that Rule 5–104(B)(1) authorized the district court to extend the time period provided by Rule 5–802(H). The motion was made before the thirty-day period expired, and the court extended the period by a period comparable to the period allowed by Rule 12–201(E)(1) and for good cause. We think we would be elevating form over substance to hold that the Amended Petition was not timely filed. We do, however, note the validity of the State's concern about the text of Rule 5–104(B) and Rule 12–201(E) and direct the appropriate rules committees to consider that concern and make such recommendations as seem appropriate.

We next address Defendant's argument that the district court erred in denying his petition.

■ {10} "The right to effective assistance of counsel free from conflicts of interest is guaranteed by the Sixth Amendment of the United States Constitution." *State v. Sosa*, 1997–NMSC–032, ¶ 20, 123 N.M. 564, 943 P.2d 1017. Ordinarily, a claim of ineffective assistance of counsel has two parts. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defendant must show "counsel's performance was deficient [and] . . . that the deficient performance prejudiced the defense." *Id.* At the hearing on the Amended Petition for Habeas Corpus, the district court found that the outcome of the trial in 1997 was not affected by the conflict on which the Amended Petition relied, and the record contains nothing to suggest that this finding is erroneous. Nevertheless, in addition to competent representation, an attorney owes his or her client "a duty of loyalty, a duty to avoid conflicts of interest." *Id.* at 688, 104 S.Ct. 2052. Further, in some circumstances involving a conflict of interest, prejudice is presumed. *Id.* at 692, 104 S.Ct. 2052. Consequently, the analysis of an ineffective assistance of counsel claim based on a conflict of interest requires a different analysis than the more typical ineffective assistance of counsel claim based on lack of competence and resulting prejudice.

■ {11} In *Strickland*, the United States Supreme Court identified cases in which a defendant has been denied counsel or in which the State has interfered with counsel's assistance as cases in which prejudice is presumed because "[p]rejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost." *Id.* The court also identified another "type of actual ineffectiveness claim [that] warrants a similar, though more limited, presumption of prejudice." *Id.* "[P]rejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of repre-

sentation corrupted by conflicting interests." *Id.* Nevertheless, prejudice is not automatically presumed. A defendant must show that counsel, " 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his [or her] lawyer's performance.' " *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)); *see also State v. Martinez*, 2001–NMCA–059, ¶ 24, 130 N.M. 744, 31 P.3d 1018 ("[T]o invoke such a presumption of prejudice, there must be an actual, active conflict that adversely affects counsel's trial performance; the mere possibility of a conflict is insufficient.").

{12} In this case, Defendant is alleging an actual conflict of interest existed in defense counsel's representation of both Defendant and State witness Clint Grant. Defendant must establish more than that counsel was the attorney for both Grant and himself. There must be a showing that the representation of both Defendant and Grant adversely affected counsel's trial performance on behalf of Defendant. Yet, we must be mindful of the fact that the test apparently differs from the prejudice prong of a more typical *Strickland* claim of ineffectiveness and that the United States Supreme Court has said "unconstitutional multiple representation is never harmless error." *Cuyler*, 446 U.S. at 349, 100 S.Ct. 1708.

**A.**

■ {13} The United States Supreme Court has decided two key cases dealing with ineffective assistance of counsel claims based on a conflict of interest. *See id.* at 337, 100 S.Ct. 1708; *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). In *Holloway*, one attorney was appointed to represent three co-defendants. 435 U.S. at 477, 98 S.Ct. 1173. When he asked to be removed from the case because of possible conflicts of interests in the co-representation of the multiple defendants, the trial court refused. *Id.* The Supreme Court held that when the trial court is made aware of a conflict of interest because of multiple representation and counsel is forced to proceed, prejudice need not be shown. *Holloway*, 435 U.S. at 488–91, 98 S.Ct. 1173. In *Cuyler*, the Supreme Court addressed a situation in

which trial counsel did not alert the trial court to a conflict of interest. The Court held that "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler,* 446 U.S. at 348, 100 S.Ct. 1708 (footnote omitted).

{14} Defendant claims that *Holloway* is the correct standard to apply in this case. However, we view *Holloway* as applicable to different circumstances, circumstances in which defense counsel is required to represent co-defendants over objection and has shown in making the objection a basis for concluding that his or her performance was affected. In *Holloway,* the objection was made at trial, and the post-conviction remedy was an evidentiary hearing. In this case, Defendant did not make an objection at trial. We apply *Cuyler,* which requires a showing of an actual conflict of interest that adversely affected performance. We have distinguished the potential for conflict from an actual conflict. *See State v. Robinson,* 99 N.M. 674, 678, 662 P.2d 1341, 1345 (1983).

■ {15} "Although not essential to our analysis, the adverse effects of actual conflicts can also be demonstrated when 'some plausible defense might have been pursued but was not because it would be damaging to another's interest.'" *Martinez,* 2001-NMCA-059, ¶ 33, 130 N.M. 744, 31 P.3d 1018 (quoting *State v. Santillanes,* 109 N.M. 781, 783, 790 P.2d 1062, 1064 (Ct.App.1990)). Defendant suggests that defense counsel did not cross-examine Grant as vigorously as he might have done otherwise, because the State's willingness to dismiss the charges against Grant depended in part on his testimony against Defendant. Defendant also notes that the facts demonstrating a disqualifying conflict of interest were raised by the State at a pre-trial conference. While the focus seemed to have been on protecting Grant, rather than Defendant, the prosecutor noted that there was evidence she could not disclose to defense counsel, although she would have been able to disclose that evidence had he not also represented Grant. Finally, Defendant noted that there is a memorandum in the record that demonstrates the State was aware of the conflict

before its pre-trial disclosure and before defense counsel knew of Grant's role in the investigation and the State deliberately concealed the relevant facts.

■ {16} A review of the record shows that the representation did overlap. However, overlapping representation ordinarily is not enough to justify the presumption of prejudice that arises under *Strickland* when there is an actual conflict that adversely affects trial counsel's performance. *See Strickland,* 466 U.S. at 692, 104 S.Ct. 2052 (describing when prejudice is presumed in a conflict of interest case as opposed to the automatic presumption of prejudice that arises when a defendant is denied counsel or when the State frustrates a defendant's constitutional right to effective assistance of counsel).

**B.**

{17} Other states have addressed this same issue. Some have found no conflict of interest was shown, others have ordered an evidentiary hearing by the trial court to determine if there is an actual or potential conflict of interest, and others have found a per se conflict of interest based on the facts. *See Brooks v. State,* 686 So.2d 1285 (Ala. Crim.App.1996); *In re Darr,* 143 Cal.App.3d 500, 191 Cal.Rptr. 882 (Ct.App.1983); *Craddock v. State,* 173 Ga.App. 133, 325 S.E.2d 804 (1984); *People v. Daly,* 341 Ill.App.3d 372, 275 Ill.Dec. 215, 792 N.E.2d 446 (2003); *State v. Duncan,* 435 N.W.2d 384 (Iowa Ct. App.1988). The opinions also note the relevance of whether the representation is simultaneous or successive and whether the dual representation bears a sufficient relationship to justify further inquiry. Some suggest the trial court has a duty to inquire about the conflict; others would not impose that duty.

{18} In *Brooks,* the Alabama court found that there was an actual conflict of interest when defense counsel had previously represented the confidential informant witness whose evidence led to the arrest of the defendant. 686 So.2d at 1286–87. In that case, the court noted that the defendant was not required to show prejudice. *Id.* at 1287. In *Darr,* the California court noted that defense counsel could not adequately represent the

defendant and the prosecution witness, who had a pending probation violation charge in which defense counsel was supposed to represent the witness, because counsel could not adequately protect both parties' interests. 191 Cal.Rptr. at 890–92. Further, the court held that under the circumstances in that case the trial court had a duty to inquire sua sponte into the possibility of a conflict when it was revealed in the course of trial. *Id.* at 892–93. In *Duncan*, the Iowa court held that an actual conflict of interest existed in defense counsel's dual representation of the prosecution witness and the defendant. 435 N.W.2d at 385, 387. In *Duncan*, the witness refused to waive the attorney-client privilege on cross-examination. *Id.* at 385. The court determined that the facts relating to the previous relationship of the witness with the defendant, and the reasons why the witness had become a confidential informant, were key in defendant's trial and were not elicited because of the attorney's dual representation. *Id.* at 387.

{19} In *Daly*, the Illinois court held there is a per se conflict of interest if there is contemporaneous representation of a defendant and a witness. 275 Ill.Dec. 215, 792 N.E.2d at 450. In that case, a paid confidential informant had been represented previously by defense counsel on charges as a result of which he became a confidential informant. *Id.* at 448. Defense counsel's previous representation of the confidential informant, who later became a witness in the defendant's case, was of significance to the defendant's case because the charges against the informant were dismissed as a result of his favorable testimony. *Id.* at 451. "In a situation where defense counsel has previously represented one of the State's witnesses, a *per se* conflict of interest exists if the *professional relationship* between counsel and the witness is *contemporaneous* with counsel's representation of defendant." *Id.* at 450. *Daly* makes clear that contemporaneous representation does not mean simultaneous representation. *Id.* The court noted that the professional relationship of defense counsel to the witness continues indefinitely, at least to the extent that defense counsel would be called upon to cross-examine the witness or former client on matters concerning defense counsel's representation of that witness. *Id.* "A professional relationship is ongoing, even if formal representation has ended, if circumstances exist such that the attorney-client privilege may be violated." *Id.*

{20} In *Craddock*, however, the Georgia court held that the defendant failed to show an actual conflict of interest on the part of his attorney who also represented the confidential informant in his case. 325 S.E.2d at 805. The court noted that defense counsel represented the confidential informant on an unrelated matter, and the defendant had failed to show on the record that an actual conflict of interest or potential conflict had actually impaired the attorney's representation or performance at trial. *Id.* at 805. " 'Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial ... [u]nless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry.' " *Id.* at 806 (quoting *Cuyler*, 446 U.S. at 346–47, 100 S.Ct. 1708) (footnotes omitted).

**C.**

{21} The analysis in *Daly* is persuasive. Under *Daly*, Defendant must show that while counsel represented Defendant there was an ongoing professional relationship between Grant and defense counsel that requires the protection of the attorney-client privilege. Further, Defendant must show that counsel's representation of Grant involved a matter relevant to Defendant's trial. If there is significant relevance, a per se conflict of interest can be identified. *See Daly*, 275 Ill.Dec. 215, 792 N.E.2d at 451. There is no doubt in this case that defense counsel represented both Defendant and Grant. Counsel testified that his representation of Grant was finished when counsel started representing Defendant, and he no longer had a professional relationship with Grant. However, the record indicates that there was an overlap in the representation of Defendant and Grant. During the course of representing Defendant, defense counsel learned that Grant was actually the confidential informant who introduced Defendant to

the undercover agent. In Grant's testimony, he testified to introducing and being present for at least one buy by the undercover agent. Furthermore, the duties an attorney owes to a client can extend beyond the termination of representation. *See id.*

{22} We conclude that defense counsel was operating under a conflict of interest in representing both Grant and Defendant. As Defendant points out, defense counsel could not effectively cross-examine Grant because of his confidential relationship resulting from counsel's prior representation.

{23} Further, the record suggests that defense counsel's prior representation of Grant affected cross-examination. In this case, defense counsel was representing Defendant on trafficking and racketeering charges while also representing Grant in a pending probation violation, which was later dismissed apparently in exchange for his testimony against Defendant. Further, in this case defense counsel had been the attorney of record at the time of the plea agreement in which Grant became a confidential informant in anticipation that pending charges against him would be subsequently dismissed. During cross-examination, defense counsel did elicit testimony from Grant concerning his prior use of drugs, but he did not elicit much information on his plea agreement. He also did not attack Grant's character or credibility.

{24} This case is difficult because early on the State became aware of a potential conflict of interest. However, the State did not immediately disclose this potential conflict; rather, the State tried to exploit the conflict. Through Grant, the State contacted and recorded Grant's conversations with Defendant and Grant's conversations with defense counsel, and later the State attempted to use these conversations to revoke Defendant's bond.

{25} This case is exactly the situation the Illinois court sought to avoid in *Daly*. The court in that case cautioned against situations in which counsel has an ongoing professional relationship with the witness and the defendant. 275 Ill.Dec. 215, 792 N.E.2d at 450. The dismissal of the charges in the drug case and the probation violation were related to defense counsel's representation of Defendant. Unlike other cases in which no conflict was identified, the charges of trafficking and racketeering were related to defense counsel's prior representation of Grant. Counsel's representation of Grant involved a matter of significant relevance to Defendant's trial.

{26} We conclude that defense counsel had an ongoing professional relationship with Grant, which precluded his representation of Defendant. Counsel's representation of Defendant was adversely affected by his representation of Grant. We think the State's untimely disclosure contributed to the resulting conflict of interest in this case. The State's late disclosure, the statement of the prosecutor that information was not disclosed because of the conflict, and defense counsel's limited cross-examination are a sufficient showing of an actual conflict of interest that adversely affected counsel's performance. Defendant was deprived not only of the knowledge of the conflict but also the opportunity to waive the conflict. Because the State failed to timely disclose a conflict of which it was well aware, Defendant's right to a conflict-free representation was withheld and the trial judge was prevented from conducting an evidentiary hearing to determine the extent of the conflict.

{27} Further, we would like to note that prosecutors do have a duty to disclose, earlier rather than later, potential conflicts of interest. *See* Bruce A. Green, *Her Brother's Keeper: The Prosecutor's Responsibility When Defense Counsel Has A Potential Conflict of Interest*, 16 Am. J.Crim. L. 323, 335–38 (1989). Timely disclosure of potential conflicts of interest can avoid problems arising later in trial or retrials. *See Wheat v. United States*, 486 U.S. 153, 161–64, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); *Mannhalt v. Reed*, 847 F.2d 576, 583–84 (9th Cir.1988); *United States v. Iorizzo*, 786 F.2d 52, 59 (2d Cir.1986); *United States v. Mitchell*, 572 F.Supp. 709, 714 (N.D.Cal.1983).

The prosecution, therefore, had ample opportunity to bring the potential conflict to the trial judge's attention and move for disqualification if appropriate. Such a pro-

cess would have also enabled [the defendant] if he so desired to waive any conflict on the record after adequate warning. We trust that this opinion will ensure a pre-trial disposition of such conflict of interest issues in the future.

*Mannhalt,* 847 F.2d at 584.

The reversal here is the direct result of the prosecution's using defense counsel's conflict of interest as a means of affecting the evidence going before the jury instead of moving for his disqualification before the trial. The prosecutors here were aware of defense counsel's conflict of interest at an early stage and were invited by the district judge to make a disqualification motion in writing.

*Iorizzo,* 786 F.2d at 59.

{28} The prosecutor's faithful compliance with his or her duty to disclose not only enables the trial judge to evaluate the conflict for purposes of relying on motions to disqualify. Compliance with that obligation also enables the trial judge to rule appropriately on waivers. In *Wheat v. United States,* the United States Supreme Court was confronted with the issue of whether a district court judge can refuse to accept waivers of conflict when multiple co-defendants that would testify against each other wanted to waive their right to conflict-free representation. 486 U.S. at 154, 108 S.Ct. 1692. In *Wheat,* the prosecutor aware that a potential conflict could develop alerted the trial court which decided, based on the facts in that case, that defense counsel could not represent all three defendants. *Id.* at 155, 164, 108 S.Ct. 1692. The Court held:

[W]e think the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.

*Id.* at 163, 108 S.Ct. 1692.

### III. CONCLUSION

{29} We therefore conclude Defendant has shown an actual conflict of interest that ad-

versely affected his counsel's representation of him. He is entitled to a new trial. We reverse and remand for further proceedings consistent with this opinion.

{30} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PATRICIO M. SERNA, PETRA JIMENEZ MAES, and RICHARD C. BOSSON, Justices.