This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                           **NO. 29,920**

**VIRGIL MARTINEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Kenneth Martinez, District Judge**

Gary K. King, Attorney General
Andrea Sassa, Assistant Attorney General
Santa Fe, NM

for Appellee

Albright Law & Consulting
Jennifer R. Albright
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

Defendant Virgil Martinez (Defendant) was tried for aggravated driving while under the influence of intoxicating liquor, contrary to NMSA 1978, Section 66-8-102 (2007) (amended 2008 and 2010). After Defendant rested his case, the State called Christobol Garcia, a witness from Defendant's witness list, for rebuttal. Believing there was a conflict because Garcia was represented by the Public Defender Department (the Department) in an unrelated case, Defendant's attorney (PD) refused to cross-examine Garcia. The jury convicted and Defendant appeals, arguing that his right to effective assistance of counsel was violated because of the alleged conflict. We affirm.

## I.    BACKGROUND

On July 20, 2007, at 10:08 in the evening, Defendant was pulled over by Deputy Kyle Hartsock, a member of the Bernalillo County Sheriff's DWI Enforcement Unit. The deputy testified that Defendant had been slow to merge when his lane ended and that despite the deputy's close proximity and use of his lights and siren, Defendant did not begin to pull over for fifteen or twenty seconds. Additionally, he testified that Defendant admitted to drinking one beer at a friend's house and that Defendant smelled of alcohol and had bloodshot, watery eyes. The deputy administered a portable breath test, which indicated that there was alcohol in Defendant's system. The deputy then administered several field sobriety tests. After

the field tests, the deputy concluded that he had probable cause to arrest Defendant for DWI. The deputy testified that he read the Implied Consent Act to Defendant and Defendant refused repeated requests to take a breath test.

During the cross-examination of Defendant's son, the State began to lay the foundation to call Garcia as a rebuttal witness. Garcia had been listed as a defense witness. Four days prior to trial, the State interviewed Garcia. During the interview, Garcia apparently indicated very specific times when Defendant left his house that conflicted with Defendant's testimony regarding when he left the house. In the midst of this discussion about Garcia, PD indicated that Garcia was represented by Alex Kostich, another public defender, in an unrelated case.

After Defendant rested his case, and after a lengthy discussion concerning the ethical implications to PD of allowing Garcia to testify, the district court allowed the State to call Garcia in rebuttal. The State conducted a brief direct examination, concentrating on when Defendant arrived at and left from Garcia's house. Garcia testified that on the night in question Defendant arrived at his house between 7:30 and 8:00 after work and stayed for between an hour and an hour and a half. However, Garcia acknowledged that he had previously stated that Defendant arrived at 7:30 and left at 8:30. Garcia also testified that Defendant had told him that "he was going to go get him a drink and go home and go relax" after he left.

PD refused to cross-examine Garcia and moved for a mistrial on the grounds that he was "prevented from cross-examining [Garcia] because of the conflict of interest" and that it was "a denial of [Garcia's] Sixth Amendment right to confront." There was considerable discussion of whether a conflict existed, which we explain as necessary below. Ultimately, the district court ordered that substitute counsel and conflict counsel be appointed for Garcia going forward and that since Garcia was no longer a client of the Department, no conflict existed. Nevertheless, PD asserted that "[Garcia] has been advised as to whether to testify and how to handle cross-examination by my colleague, Mr. Kostich, [and] that's the representation that's relevant for this representation, not in the future, but what's happened this afternoon." Because PD continued to believe that a conflict existed, he elected not to cross-examine Garcia.

## II. DISCUSSION

Defendant raises two arguments: (1) that the district court erred in determining that no conflict existed and denying his motion for a mistrial, and (2) that his right to effective assistance of counsel was violated because his attorney's performance was deficient. We address each argument in turn.

"The right to effective assistance of counsel free from conflicts of interest is guaranteed by the Sixth Amendment of the United States Constitution." *Rael v. Blair*,

4

2007-NMSC-006, ¶ 10, 141 N.M. 232, 153 P.3d 657 (internal quotation marks omitted). This right encompasses two guarantees: (1) the right to counsel of reasonable competence, and (2) the right to counsel's undivided loyalty. *See State v. Martinez*, 2001-NMCA-059, ¶¶ 22-24, 130 N.M. 744, 31 P.3d 1018.

**A.     Loyalty**

We begin our discussion with counsel's duty of loyalty to his client. Defendant contends that the district court erred in determining that no conflict existed. The State responds that the district court properly denied Defendant's motion for a mistrial based on the alleged conflict.

New Mexico has "adopted a case-by-case analysis for claims of potential conflict of interest within the [Public Defender] Department at the trial level based, in part, on [a] decision not to apply the imputed disqualification rules applicable to private law firms to the [Public Defender] Department." *Morales v. Bridgforth*, 2004-NMSC-034, ¶ 3, 136 N.M. 511, 100 P.3d 668. "[T]he [Public Defender] Department will not be automatically disqualified for potential conflicts of interest, but rather only for actual conflicts of interest that are not waived by the individual client." *Id.* When, at trial, the Public Defender Department claims that a conflict exists, the district court

shall: (1) determine whether a conflict of interest or other disqualification of the office of public defender in fact exists, (2) determine whether the conflict or disqualification is local or statewide, (3) if the conflict or disqualification is local, direct the Chief Public

5

Defender to provide a staff attorney or contract attorney from another county or district to represent the indigent, and (4) if the conflict or disqualification extends beyond the county or district, then the court may appoint counsel for the indigent defendant.

*Richards v. Clow*, 103 N.M. 14, 16, 702 P.2d 4, 6 (1985). In this case, the district court determined that no conflict existed, and it therefore was not required to consider the remaining steps set forth in *Richards*. Accordingly, the question we must resolve is whether the district court's conclusion that there was no conflict was in error.

"[T]he analysis of an ineffective assistance of counsel claim based on a conflict of interest requires a different analysis than the more typical ineffective assistance of counsel claim based on lack of competence and resulting prejudice." *Rael*, 2007-NMSC-006, ¶ 10. Prejudice is presumed when counsel is burdened by a conflict of interest, but the presumption is not automatic. *See id.* ¶ 11. Mere overlapping representation is not enough to trigger the presumption. *See id.* ¶ 16. Instead, a defendant must show that an actual conflict adversely affected his attorney's performance. *Id.* ¶ 11. "We review de novo whether there is a conflict of interest and whether [a d]efendant is entitled to a presumption of prejudice." *State v. Vincent*, 2005-NMCA-064, ¶ 4, 137 N.M. 462, 112 P.3d 1119.

The record in this case, though extensive, reveals no indication that PD had received confidential information from Garcia's attorney. Although the attorneys argued that Garcia might be asked to admit to violating his probation, they did not

6

know whether or when he might have been on probation. PD did not assert that he had received specific information from Kostich about Garcia, but only that he "may or may not have discussed" Garcia with Kostich. PD made vague statements that he would use prior convictions and even pending cases to impeach Garcia, but provided no factual basis for how these would be admissible. The district court emphasized that, except for the limited exceptions allowed in the rules of evidence, PD's questions along those lines would not be allowed.

PD gave only one example that was not phrased as speculation: "I can give a concrete example of a conflict. Mr. Garcia is a drug addict. He may have used drugs in the time since this incident that would affect his memory. We have a right to cross-examine him on whether he's been using heroin." Even this, however, fails to disclose whether PD learned of the drug addiction from Kostich. Additionally, this statement only alleges that Garcia may have used drugs, not that PD had learned of the drug use (either general use or specific instances) from Kostich. Furthermore, PD had already disclosed to the court, without any apparent concern for confidentiality, that he chose not to call Garcia because "he has a drug addiction [and] he[] looks terrible" and because Garcia would only have corroborated Defendant's story.

PD's arguments at trial also undermine Defendant's assertion on appeal that there was an actual conflict. At trial, PD repeatedly made it clear that the conflict was

"not necessarily the fact-specific nature" at issue, but simply that public defenders were "presumed to have knowledge of one another's representation of one another's clients." Our cases, however, have been clear that mere overlapping representation is not enough—actual conflict must be shown. *See Rael*, 2007-NMSC-006, ¶ 12; *State v. Robinson*, 99 N.M. 674, 678, 662 P.2d 1341, 1345 (1983) (noting that the possibility of conflict inheres in almost every instance of multiple representation, but "is insufficient to impugn a criminal conviction." (internal quotation marks omitted)); *Martinez*, 2001-NMCA-059, ¶ 37 (reasoning that the mere possibility of conflict is not enough, but that a new trial is warranted when defense counsel's "struggle to serve two masters cannot seriously be doubted" (internal quotation marks omitted)).

Having determined that no actual conflict existed due to past communications between PD and Kostich, the district court ordered Garcia conflicted out of the Department in the future. This ensured that there was no possibility of conflict. On the record before us, there is no basis to disagree with the district court's conclusion. As there was no actual conflict, PD did not violate his Sixth Amendment duty of loyalty to Defendant.

**B.    Competence**

Defendant's second argument is that PD's deficient performance deprived him of his right to effective assistance of counsel. The State counters that the record is

8

insufficient to decide this issue and that, alternatively, there was no ineffective assistance because Defendant was not prejudiced.

"To state a case of ineffective assistance of counsel, [the d]efendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *Garcia v. State*, 2010-NMSC-023, ¶ 30, 148 N.M. 414, 237 P.3d 716 (internal quotation marks omitted). Where the jury has returned a verdict, prejudice depends on "whether there is a reasonable probability that, absent the errors, the fact[-]finder would have had a reasonable doubt respecting guilt." *Lytle v. Jordan*, 2001-NMSC-016, ¶ 27, 130 N.M. 198, 22 P.3d 666 (internal quotation marks omitted).

We assume without deciding that PD's failure to check for conflicts or to be familiar with the law of conflicts as it applies to the Department was deficient performance. However, since we have held that no actual conflict arose, no prejudice resulted from this failure. This does not, however, end our analysis. We must also consider whether it was ineffective assistance for PD to refuse to cross-examine Garcia once the district court concluded that no conflict existed. We therefore also assume, again without deciding, that the failure to cross-examine was deficient performance. We conclude that this failure did not prejudice Defendant because there

9

was not a reasonable probability that, but for this failure, the jury would have had reasonable doubt concerning Defendant's guilt.

Garcia's testimony was not necessary to obtain a conviction in this case. The State elicited essentially three answers from Garcia: when Defendant arrived, when Defendant left, and where Defendant said he was going. Because Garcia's answers were vague, the State chose to impeach him with his answers from the earlier interview, which apparently were specific. If believed, the specific answers used to impeach Garcia would support an inference that Defendant had been drinking for an hour before he was pulled over. We note that Defendant's prior statements were not admissible for their truth, but only to show inconsistency. *See State v. Macias*, 2009-NMSC-028, ¶ 20, 146 N.M. 378, 210 P.3d 804. It was up to the jury to evaluate what weight to give Garcia's conflicting testimony. However, even if the jury believed that Defendant had not had the extra hour of time to drink, the State had already presented abundant evidence that Defendant's driving was impaired to the slightest degree as a result of alcohol. Accordingly, we do not believe that there is a reasonable probability that, had PD cross-examined Garcia, the jury would not have convicted. We therefore conclude that the failure to cross-examine Garcia was not prejudicial.

**III. CONCLUSION**

For the foregoing reasons, we affirm the district court.

**IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**MICHAEL E. VIGIL, Judge**