This decision was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court and does not include the filing date.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    **Plaintiff-Appellee,**

**v.**                          **NO. 29,698**

**ROBERT FRY,**

    **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

The Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant


Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**Daniels, Chief Justice.**

Defendant was convicted of two counts of first-degree murder, one count of larceny, two counts of tampering with evidence, and two counts of intimidation of a witness, all of which stem from a double murder committed in a Farmington store on Thanksgiving night in 1996. The trial court sentenced Defendant to life in prison for each first-degree murder conviction, giving this Court exclusive jurisdiction to hear his direct appeal. *See* N.M. Const. art. VI, § 2 ("Appeals from a judgment of the district court imposing a sentence of death or life imprisonment shall be taken directly to the supreme court."); *accord* Rule 12-102(A)(1) NMRA.

Defendant argues (1) that the preliminary hearing testimony of an unavailable witness should not have been admitted because it did not meet a hearsay exception under our rules of evidence and because Defendant did not have an opportunity to cross-examine the witness on the statement, (2) that representation of that witness by the same attorney who was representing Defendant in an unrelated matter created a conflict of interest that requires overturning Defendant's conviction, and (3) that the evidence at trial was insufficient to support Defendant's convictions.

We find no reversible error. Because the claims raise no questions of law that New Mexico precedent does not already address sufficiently, we issue this

unpublished decision affirming Defendant's convictions pursuant to Rule 12-405(B)(1) NMRA.

## I. BACKGROUND

On Thanksgiving night in 1996, someone entered a Farmington, New Mexico, store called the Eclectic and killed Matthew Trecker and Joseph Fleming. The store was a "head shop," selling items that included bongs, pipes, black light posters, lingerie, knives, and swords.

On the morning after Thanksgiving, an employee at a business next door to the Eclectic noticed the store had a broken window and saw a computer monitor lying in the street. After police were called to the scene, they discovered the bodies of Matthew and Joseph. An autopsy revealed Joseph had abrasions on his neck consistent with someone stepping on his throat, had multiple stab wounds, had his throat cut, and had been rendered unconscious by a blow to the head. Matthew had a wound on his neck consistent with having been struck by the flat side of a sword, had multiple stab wounds, and suffered severe injuries consistent with an attempt at decapitation. Approximately six swords, including one called a "Franconian sword," and about fifteen knives were missing from the store.

The police interviewed Defendant and Defendant's friend, Harold Pollack, about the murders shortly after they occurred. Both acknowledged that they had

3

been at the Eclectic on Thanksgiving night but denied involvement in the murders.

Over the course of the next several years, Defendant confessed to at least four people that he had in fact been the killer at the Eclectic and provided details of the killings.

In late 2000, a new police detective assigned to the four-year-old case initiated new investigative efforts that implicated Pollack. After police contacted Pollack and Pollack learned that Defendant had confessed involvement in the murders to various people, Pollack agreed to talk to law enforcement if he could have his attorney present. The investigators suggested that attorney Randy Roberts represent Pollack. At the time, Mr. Roberts was already representing Pollack in an unrelated matter and was also representing Defendant in an unrelated criminal case. Pollack received and signed an immunity agreement from the State and later re-signed that same immunity agreement while being represented by different counsel. Pollack entered an *Alford* plea[1] to a charge of accessory to first-degree murder. He testified under oath at a preliminary hearing but asserted he would refuse to testify at trial even if ordered to do so by the trial judge. Because the trial court found him to be

---

[1]An *Alford* plea is a plea bargain in which a defendant pleads guilty but maintains he or she is innocent of the crime charged. *See State v. Hodge*, 118 N.M. 410, 412 n.1, 882 P.2d 1, 3 n.1 (1994) (citing *North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970)).

unavailable as a witness, two prosecutors read his preliminary hearing testimony to the jury, with one prosecutor reading each question asked and the other prosecutor reading Pollack's answer from the witness stand. The jury also heard testimony from witnesses to whom Defendant confessed the murders, as well as testimony from other witnesses, discussed below.

*Pollack's Account*

Thanksgiving night of 1996 started out with Defendant, Pollack, and various other friends drinking at an apartment. At one point, Defendant told the group that he would go out and find a prostitute to bring back to the apartment. Defendant and Pollack left the party between 11:30 p.m. and midnight to find a prostitute. While looking for a prostitute, Defendant and Pollack saw that lights in the Eclectic were on and decided to stop at the store to use the toilet. Joseph let Defendant and Pollack in after they approached the Eclectic and knocked on the door. Defendant and Pollack knew Joseph and Matthew through mutual friends.

Defendant and Pollack both used the toilet at the Eclectic. While Matthew slept and Joseph was distracted, Defendant and Pollack stole some knives from the store, hiding some in their coats as they left the Eclectic to return to their car. Defendant and Pollack soon realized that their presence in the store that night would implicate them in the theft of the knives. Because they did not want to get caught

with the knives, Pollack and Defendant buried them in a canyon, intending to retrieve them later. After burying the knives, Defendant and Pollack discussed what to do to "cover [their] ass there." Approximately an hour after leaving with the knives, the men returned to the Eclectic, purportedly to use the bathroom again. Once again, Joseph let them in.

While in the store, Pollack became sick with alcohol poisoning and vomited in the bathroom. While in the bathroom lying on the floor, Pollack heard "some loud yelling, a slight—a slapping sound and then a loud crash." Although Pollack was still "lightheaded" from his alcohol sickness, he stepped out of the bathroom momentarily and saw Defendant wrestling with Joseph, saw Defendant put his hands around Joseph's throat, and saw Defendant stand up and put his foot on Joseph's throat.

Pollack claims not to remember anything that happened after he saw Defendant with his foot on Joseph's throat. Pollack's next recollection came when he left the bathroom a second time and saw Joseph motionless on the floor and surrounded by blood.

Pollack and Defendant specifically agreed to cover up the murder, using tissue to clean blood and vomit in the bathroom and flushing the tissue down the toilet. Defendant left the store with a bundle of knives and swords that Pollack later came

6

to believe had been used in the murders. As Defendant and Pollack left the store, Pollack looked down and saw Matthew lying on the floor with "a very large, very ragged hole where his throat should have been."

Defendant attempted to leave through the front door but broke the key in the lock, so he threw a computer monitor through the front window. Both men climbed out through the resulting hole.

Defendant and Pollack decided to throw the weapons into Farmington Lake where "they'd never be found." Defendant and Pollack broke a hole in the ice on the lake and threw the knives and Defendant's steel-toed work boots into the lake. The men then returned to the Eclectic because Defendant could not find his wallet. Defendant and Pollack entered the store to look for the wallet and left without finding it. They then drove out toward the hills, agreeing to tell the police that they had been at the Eclectic earlier that night but left and became stuck in the mud in the hills.

## II.   DISCUSSION

### A.   The District Court Did Not Err in Admitting Pollack's Recorded Preliminary Hearing Testimony.

Defendant challenges the admission of Pollack's preliminary hearing testimony on the grounds that it was inadmissible hearsay that did not fall under the

"former testimony" exception of Rule 11-804(B)(1) NMRA and that it was a testimonial statement admitted contrary to his constitutional right to confrontation. We hold that admission of Pollack's recorded preliminary testimony violated neither the New Mexico Rules of Evidence nor Defendant's constitutional right to confront adverse witnesses.

**1.      Pollack's Statement Met the Requirements of Former Testimony Under Rule 11-804(B)(1) NMRA.**

Defendant does not challenge the district court's finding that Pollack was unavailable as a trial witness under Rule 11-804(A).  Instead, Defendant argues that Pollack's preliminary hearing testimony was not admissible under Rule 11-804(B)(1)'s requirement that the defendant "had an opportunity and similar motive" to confront and examine Pollack at the preliminary hearing.  He argues that "the passage of time, the assignment of new counsel, the development of new evidence and theories of the case, and the greater importance of . . . trial testimony . . ." rendered the prior testimony inadmissible under the former-testimony hearsay exception in Rule 11-804(B)(1).  We disagree.

We review the admission of evidence for an abuse of discretion and will not reverse unless there has been a clear abuse of that discretion.  *See State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72.  "[W]e will not find an abuse

8

of discretion unless we can characterize [the district court's determination] as clearly untenable or not justified by reason." *State v. Sosa*, 1997-NMSC-032, ¶ 7, 123 N.M. 564, 943 P.2d 1017 (second alteration in original) (internal quotation marks and citation omitted).

Rule 11-804 NMRA allows the admission of certain types of statements if the statement's declarant is unavailable. The rule lists five situations in which a declarant may be considered unavailable for the purpose of the rule. *See* Rule 11-804(A)(1)-(5). One of the ways in which a declarant may be unavailable under Rule 11-804(A)(2) is if the declarant "persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so." *See State v. Gonzales*, 113 N.M. 221, 225, 824 P.2d 1023, 1027 (1992) (holding that a witness who invokes the right against self-incrimination is considered unavailable within the hearsay rules).

Rule 11-804(B)(1) NMRA allows the admission of a currently unavailable declarant's former testimony:

> given as a witness at another hearing of the same or a different proceeding or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross or redirect examination.

In *Gonzales*, we reviewed the admission of preliminary hearing testimony from a witness whom the district court found was unavailable because she refused to testify at trial. 113 N.M. at 225, 824 P.2d at 1027. The defendant argued the defense motive for cross-examining the witness had changed between the preliminary hearing and the trial. *Id.* At the hearing, the witness's testimony related to the defendant's self-defense theory; but in her absence at trial, identification of the defendant became the issue. *Id.* We allowed the witness's testimony to be admitted, saying "the motive to cross-examine the witness at the preliminary hearing was similar to the motive to cross-examine at trial because in both instances, the issues were whether a crime was committed and whether the defendant had committed the crime." *Id.* at 226, 824 P.2d at 1028.

At the preliminary hearing in this case, Defendant had an opportunity and similar motive to cross-examine Pollack. This case is like *Gonzales* in that in both cases the motive to cross-examine the witness at the preliminary hearing was the same as the motive to cross-examine at trial; in both cases and for both hearings the issues were whether a crime was committed and whether the defendant had committed the crime. *See Gonzales*, 113 N.M. at 226, 824 P.2d at 1028 ("[A]bsent extraordinary circumstances[,] preliminary hearing testimony may be admitted at trial if the witness is unavailable because the motive to cross-examine is similar.").

The passage of time, a change in counsel, and the development of new evidence did not meaningfully change that motive. And there is nothing in the record that demonstrates Defendant was not given ample opportunity to cross-examine Pollack on any fact or topic he chose. Therefore, admitting Pollack's preliminary hearing testimony was not contrary to our rules of evidence and was not an abuse of discretion.

**2. Admission of Pollack's Prior Testimony Did Not Violate Defendant's Confrontation Right.**

Questions of admissibility concerning a defendant's right of confrontation are questions of law, which we review de novo. *See State v. Dedman*, 2004–NMSC–037, ¶ 23, 136 N.M. 561, 102 P.3d 628.

Out-of-court testimonial statements are barred under a defendant's right to confront the witnesses against him unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *See State v. Johnson*, 2004–NMSC–029, ¶ 7, 136 N.M. 348, 98 P.3d 998 (citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004)).

Defendant argues our holding in *State v. Zamarripa*, 2009-NMSC-001, 145 N.M. 402, 199 P.3d 846, supports his position that the introduction of Pollack's statement violated his confrontation right. But Defendant's reliance on *Zamarripa*

is misplaced. In that case, we held that the admission of a witness's pretrial statement to police violated the defendant's right of confrontation, even though the witness took the stand at trial for the limited purpose of verifying the accuracy of the transcript of his statement. *See id.* ¶¶ 4, 30-32. The fact that the defendant in that case had no prior opportunity to cross-examine the witness on the actual substance of the statement being introduced was key to that holding. *See id.* ¶ 32. This case is different from *Zamarripa* because Defendant actually had an opportunity to cross-examine Pollack on the substance of the statement that was eventually introduced at trial. Defendant's reliance on *Zamarripa* confuses the requirement that a defendant be allowed to cross-examine a witness who testifies at trial with the requirement that a defendant must have been given a prior opportunity to cross-examine an unavailable witness whose statement is to be introduced at trial.

At the preliminary hearing, Defendant was afforded and his attorney took advantage of the opportunity to cross-examine Pollack on the testimony that was later admitted at trial. The fact that Defendant might have changed the precise manner of cross-examination if he had known at the preliminary hearing some of the things he later discovered does not mean he was deprived of the opportunity for cross-examination guaranteed by the confrontation right. *See State v. Sanders*, 117 N.M. 452, 459, 872 P.2d 870, 877 (1994) (A defendant's confrontation right "merely

guarantees an opportunity for effective cross-examination; it does not guarantee that the defense may cross-examine a witness in whatever way, and to whatever extent, the defense might wish." (internal quotation marks and citation omitted)). Accordingly, the introduction of Pollack's preliminary hearing testimony did not violate Defendant's confrontation right.

**B.      The District Attorney's Office Did Not Have to Be Disqualified.**

Defendant argues that the district attorney's office created a conflict of interest when it allowed Mr. Roberts to represent Pollack in this case while Mr. Roberts was representing Defendant in an unrelated case. Defendant argues that by doing so, the State encouraged the creation of a conflict of interest that violated our rules of professional conduct and denied him effective assistance of counsel. Accordingly, Defendant argues that the district attorney's office is guilty of prosecutorial misconduct that rose to the level of a due process violation and that required the office's disqualification.

**1.      The Conduct of the District Attorney's Office Did Not Deny Defendant Effective Assistance of Counsel.**

"Questions of law or questions of mixed fact and law, . . . including the assessment of effective assistance of counsel, are reviewed de novo." *Duncan v. Kerby*, 115 N.M. 344, 347-48, 851 P.2d 466, 469-70 (1993). *See Churchman v.*

*Dorsey*, 1996-NMSC-033, ¶ 11, 122 N.M. 11, 919 P.2d 1076 (reviewing de novo a claim of ineffective assistance of counsel arising out of an alleged conflict of interest).

"Ordinarily, a claim of ineffective assistance of counsel has two parts." *Rael v. Blair*, 2007-NMSC-006, ¶ 10, 141 N.M. 232, 153 P.3d 657 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). First, "[a] defendant must show counsel's performance was deficient." *Id.* (internal quotation marks and citation omitted). Second, a defendant must show "that the deficient performance prejudiced the defense." *Id.* (internal quotation marks and citation omitted). But in cases in which a conflict of interest is the cause of counsel's ineffectiveness, a defendant is excepted from the second requirement and does not have to show that the conflict prejudiced his or her defense. *See id.* ¶ 11 ("[P]rejudice is presumed when counsel is burdened by an actual conflict of interest." (alteration in original) (internal quotation marks and citation omitted)). This exception is not automatic, however. In order to receive the benefit of a presumption of prejudice, a defendant must show that there was "an actual, active conflict that adversely affect[ed] counsel's trial performance; the mere possibility of a conflict is insufficient." *Id.* (internal quotation marks and citation omitted); *see Churchman*, 1996-NMSC-033, ¶ 12 ("In order to demonstrate a violation of the . . . right to effective assistance of counsel,

14

the defendant must establish that an *actual* conflict of interest arose that affected the defense counsel's performance.")

Applying those established legal principles here, Defendant has not shown that there was an actual conflict of interest in *this* case. At best, Defendant has shown that a conflict arose in the unrelated case because Mr. Roberts represented Defendant in that case. But even assuming there was a conflict of interest, Defendant has not shown that any conflict of interest has adversely affected his defense counsel's performance in *this* case. Therefore, we hold that allowing or encouraging Mr. Roberts to represent the State's key witness did not amount to a denial of Defendant's right to effective assistance of counsel.

**2. The Conduct of the District Attorney's Office Did Not Deny Defendant Due Process.**

"[R]eview of disqualification orders mandates that the Court look at whether the issues involve legal or factual questions." *State v. Juan*, 2010-NMSC-041, ¶ 31, 148 N.M. 747, 242 P.3d 314 (citing *State v. Gonzales*, 2005-NMSC-025, ¶¶ 24-25, 138 N.M. 271, 119 P.3d 151). "When factual questions are involved, we defer to the sound judgment of the trial court." *Id.* "[W]here the [trial] court resolves issues involving values that animate legal principles or the consideration of abstract legal doctrines that require the balancing of underlying policies and competing legal

15

interests, our review is de novo." *Id.* (second alteration in original) (internal quotation marks and citation omitted).

We review the trial court's ruling on prosecutorial misconduct under the deferential abuse of discretion standard because the "trial court is in the best position to evaluate the significance of any alleged prosecutorial errors." *State v. Duffy*, 1998-NMSC-014, ¶ 46, 126 N.M. 132, 967 P.2d 807. Our resolution of this issue "rests on whether the prosecutor's improprieties had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *Id.*

As discussed above, Defendant has not demonstrated that there was an actual conflict of interest that prejudiced his case. But even assuming a conflict of interest was created by the district attorney's conduct, Defendant has not shown how this conflict of interest amounted to prosecutorial misconduct that resulted in a denial of due process or an unfair trial in general. *See Case v. Hatch*, 2008-NMSC-025, ¶ 45, 144 N.M. 20, 183 P.3d 905 (2008) ("The focus of a due process analysis . . . is on the fairness of the trial, not the culpability of the prosecutor." (internal quotation marks and citation omitted)). Therefore, we hold that allowing or encouraging Mr. Roberts to represent Pollack did not amount to a denial of Defendant's right to due process of law.

16

**C.     There Was Sufficient Evidence to Support Defendant's Convictions.**

**1.     Standard of Review**

"The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted). "In our determination of the sufficiency of the evidence, we are required to ensure that a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction." *Id.* (internal quotation marks and citation omitted). "[W]e must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

**2.     Murder**

In order to find Defendant guilty of first-degree murder of the victims, the jury had to find beyond a reasonable doubt that:  (1) Defendant killed Joseph Fleming and Matthew Trecker, (2) he did so with the deliberate intention of taking their lives, and (3) this happened in New Mexico on or about the date specified in the criminal information.  *See* NMSA 1978 § 30-2-1 (1994); UJI 14-201 NMRA.

17

First, we consider whether there was sufficient evidence to prove Defendant killed the victims. A witness testified that Defendant related exacting details of the crime scene the day after the murders, including the facts that one victim had been stabbed multiple times and nearly decapitated, that a monitor had been thrown out the front window of the store, and that a key had been broken off in the lock. When the witness asked Defendant how he knew these details, Defendant told her that the police had let him walk through the murder scene and that he had psychic abilities that allowed him to place his hands upon the murder scene and see in a dream what had happened.

Investigators found more than fifty bloody boot prints, consistent with Defendant's boots, at the crime scene. Defendant knew the extent of the victims' wounds without having seen them other than when the wounds were inflicted. Defendant gave an opinion as to the probable murder weapon (a sword called the "Franconian cleaver").

Several months to a year after the murders, Defendant told two acquaintances that he killed the victims; and he threatened the second of these witnesses by telling him that if he told anyone, "[Defendant would] cut [his] head off." On the same night, Defendant confirmed his admission to both witnesses by giving further details of the killings. Defendant repeated both the admission and the threat to the second

witness on a second occasion.

Defendant confessed to the murders to a third witness about a year and a half after the murders, acknowledging that the key had broken off in the door lock and claiming that he had thrown "a television" through the window in order to leave the store.

More than two years after the killings, Defendant asked one of the victim's former girlfriends out on a date and told her while on that date that the murder weapon would never be found because it was hidden. On another occasion Defendant confessed to her that he was "glad [he] killed" the victim.

Defendant's attempts after the murders to eliminate evidence of the crimes by hiding weapons from the murder scene, a conscious effort to mislead police, indicate an awareness of his own guilt. *See State v. Flores*, 2010-NMSC-002, ¶ 23, 147 N.M. 542, 226 P.3d 641. ("[E]vidence of . . . an attempt to deceive the police may prove consciousness of guilt." (internal quotation marks and citation omitted)). We hold the jury received sufficient evidence to prove beyond a reasonable doubt that Defendant killed the victims.

We next consider Defendant's intent. The element of intent is seldom susceptible to direct proof, since it involves the state of mind of the defendant, and it thus may be proved by circumstantial evidence. *State v. Manus,* 93 N.M. 95, 98,

19

597 P.2d 280, 283 (1979) (overruled on other grounds by *Sells v. State*, 98 N.M. 786, 653 P.2d 162 (1982)). The jury learned that the attack was likely a surprise attack on the sleeping or otherwise unwary victims by a person who knew them because there was no sign of a break-in and little evidence of a struggle. *See State v. Cunningham*, 2000-NMSC-009, ¶ 28, 128 N.M. 711, 998 P.2d 176 (inferring deliberate intent when the defendant killed an incapacitated and defenseless victim). The jury learned that one of the victims was already incapacitated when Defendant continued to inflict wounds upon him, and that one victim's injuries were so severe that it appeared Defendant attempted to decapitate him, both of which demonstrate "overkill." *See Flores*, 2010-NMSC-002, ¶¶ 21-22 (finding an attempt at "overkill" among the evidence sufficient to uphold a finding of intent). Therefore, we hold there was sufficient evidence for the jury to find beyond a reasonable doubt that Defendant intended to kill the victims.

Viewing the evidence in the light most favorable to the verdict, a reasoning jury could have found beyond a reasonable doubt all of the elements necessary to prove first-degree murder.

**3.    Tampering with Evidence**

In order to prove that Defendant tampered with evidence, the State had to prove that (1) Defendant hid physical evidence; (2) Defendant intended to prevent

20

his apprehension, prosecution, or conviction; and (3) this happened in New Mexico on or about the date specified in the criminal information. *See* NMSA 1978 § 30-22-5 (1963) (amended 2003); UJI 14-2241 NMRA.

The jury learned Defendant dug a hole to bury the first weapons he and Pollack stole in order to avoid getting caught. Testimony also indicated Defendant threw his boots and the knives and swords he took from the store after the killings into a hole in the surface ice of Farmington Lake in an effort to elude detection and avoid prosecution or conviction. Viewing the evidence in the light most favorable to the verdict, a reasoning jury could have found beyond a reasonable doubt all of the elements necessary to prove tampering with evidence.

**4. Larceny Over $250**

In order to prove larceny over $250, the State had to prove that (1) Defendant took and carried away knives and assorted weapons belonging to another and valued over $250; (2) at the time Defendant took the property, he intended to permanently deprive the owner of it; and (3) this happened in New Mexico on or about the date specified in the criminal information. *See* NMSA 1978 § 30-16-1 (1987) (amended 2006); UJI 14-1601 NMRA. The jury learned Defendant and Pollack stole weapons valued over $1,200, including knives when they first visited the Eclectic and knives and swords after Defendant killed the victims. Viewing the evidence in the light

21

most favorable to the verdict, a reasoning jury could have found beyond a reasonable doubt all of the elements necessary to prove larceny.

**5.      Witness Intimidation**

In order for the jury to find Defendant intimidated witnesses, the State had to prove that (1) Defendant knowingly intimidated or threatened Harold Pollack and other witnesses in order to keep them from testifying to facts relating to the possible commission of the two murders, and (2) this happened in New Mexico on or about the date specified in the criminal information. *See* NMSA 1978 § 30-24-3(3) (1991) (amended 1997); UJI 14-2402 NMRA.  The jury heard testimony that Defendant impliedly threatened Pollack's family and told a witness to whom he confessed the murders that he would cut off his head if he told anyone.  Viewing the evidence in the light most favorable to the verdict, a reasoning jury could have found beyond a reasonable doubt all of the elements necessary to prove witness intimidation.

**III.    CONCLUSION**

The evidence was sufficient as a matter of law to support all of Defendant's convictions, and the trial court committed no error. We therefore affirm Defendant's judgment, conviction, and sentence.

**IT IS SO ORDERED.**

_____

**CHARLES W. DANIELS, Chief Justice**

**WE CONCUR:**

_____

**PATRICIO M. SERNA, Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**RICHARD C. BOSSON, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**