# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2020-NMCA-013**

**Filing Date: December 2, 2019**

**No. A-1-CA-36521**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**BRANDON DYKE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Certiorari Denied, January 13, 2020, No. S-1-SC-38079. Released for Publication February 11, 2020.

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter M. Hart, III, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## OPINION

**VANZI, Judge.**

**{1}** After Defendant Brandon Dyke was allowed to withdraw his guilty plea, a jury convicted him of multiple counts of criminal sexual penetration of a minor (CSPM) under the age of thirteen. The district court subsequently sentenced Defendant to ninety-nine years with thirty years suspended, leaving sixty-nine years to be served, minus credit for

time served. Defendant appeals his convictions arguing that (1) the district court abused its discretion in disqualifying his counsel of choice; (2) due to vindictive sentencing as a result of the withdrawal of his plea agreement, the case should be remanded for resentencing in front of a different judge; and (3) he received ineffective assistance of counsel. We affirm.

**Background**

**{2}**     In early 2007 Heather Turner (Mother) reported to Alamogordo police that Defendant had engaged in criminal sexual contact with her then six-year-old daughter (Victim). Shortly thereafter, a grand jury indicted Defendant on five counts of first degree criminal sexual penetration of a minor (CSPM) under thirteen, contrary to NMSA 1978, Section 30-9-11 (2003, amended 2009), six counts of second degree criminal sexual contact of a minor (CSCM) under the age of 13, contrary to NMSA 1978, Section 30-9-13(B) (2003), and one count of third degree CSCM, contrary to Section 30-9-13(C).

**{3}**     Two months after the grand jury indictment, the State filed a criminal information against Mother charging her with child abuse. *State v. Heather Turner*, D-1215-CR-2007-00137. The charges against Mother arose from the same series of events that resulted in the indictment against Defendant. Attorney Todd Holmes represented Mother in her case and, on December 7, 2007, Mother pled guilty to the charges and was sentenced to a period of incarceration. While Mother's case was still pending in the district court, the State filed its disclosure of witnesses in Defendant's case listing Mother as a witness.

**{4}**     On December 10, 2007, Defendant entered a written plea and disposition agreement (Agreement) in which he agreed to plead guilty to three counts of first degree CSPM, and one count of second degree CSCM. Among other things, and as part of the Agreement, the State agreed to dismiss the remaining charges against Defendant. There was no agreement as to sentencing at that time; however Defendant was ordered to undergo a sixty-day diagnostic in the Department of Corrections. In the hearing to accept the plea, the district court informed Defendant—in error—that the minimum sentence he faced would be three years. After the hearing, and pursuant to the Agreement, the court entered judgment on June 3, 2008, sentencing Defendant to a total of sixty-nine years of incarceration (three eighteen-year sentences), with portions of it running concurrently, for a total of thirty-six years in prison.

**{5}**     Holmes entered his appearance on behalf of Defendant on March 27, 2012, when he filed a petition for writ of habeas corpus alleging, inter alia, that the district court had erroneously informed Defendant of the minimum possible sentence during the plea colloquy. Defendant sought to have the sentence vacated and for trial to be set. During the hearing on the petition—held three years later on March 16, 2015—the district court told counsel that if it were to set aside the plea, Defendant "would be facing twelve counts that total . . . 183 years." Holmes responded that he had "explained that to [Defendant]," and Defendant understood that setting aside the plea could result in "a trial, conviction on all counts, and perhaps a new sentencing." After reviewing the audio

of the plea colloquy, the district court agreed that it had "misinform[ed D]efendant that the minimum amount of time was three years as opposed to eighteen," granted Defendant's petition, set aside the conviction, and set the case for trial.

**{6}**    On January 21, 2016, Holmes filed an unopposed motion to withdraw from further representation of Defendant. As grounds for his motion, Holmes stated that Defendant was "unable to afford representation at a jury trial[,]" that Holmes "was only paid to file a [h]abeas action[,]" and that "[c]ounsel for Defendant has a conflict of interest as he represented Heather Turner who is the mother of [Victim] in the above-captioned proceeding." The district court granted the motion and ordered the public defender department to appoint counsel for Defendant immediately.

**{7}**    The case proceeded and after numerous continuances was finally set for a jury trial on February 21, 2017. On February 7, 2017, the district court entered an order to transport Defendant to be present for the three-day trial. The day after entry of the transport order, and two weeks before the start of trial, Holmes filed an entry of appearance, notice of discovery demand, demand for speedy trial, and initial disclosure of witnesses. The filing stated, among other things, that Defendant intended "to call any and all State's witnesses, co-defendants, and any witnesses listed in any of the discovery" but made no mention of Defendant's current court-appointed counsel or Holmes' prior withdrawal of representation. Although unclear, it appears that Holmes did not serve Jeffrey Van Keulen, the public defender appointed to represent Defendant.

**{8}**    The State immediately filed a motion to deny substitution of counsel and/or motion to disqualify Holmes. As grounds for its motion, the State alleged that Defendant's court-appointed counsel had not been relieved of his representation in contravention of Rule 5-107(B) NMRA, nor had Holmes sought court-approval for his entry of appearance. The motion also stated that Holmes had "an actual conflict in this cause as he previously represented a co-defendant, [Mother]," and that he was allowed to withdraw from the instant case citing his conflict in representing her. Further, the State contended that Holmes did not have a waiver from Mother, as required by Rule 16-107 NMRA, that Mother would not waive the conflict, and that this information was provided to Mr. Holmes. Mother was still listed on the witness list and was expected to testify at Defendant's trial.

**{9}**    After a hearing on the State's motion to deny substitution of counsel and/or disqualify Holmes, which we discuss in further detail in our analysis below, the district court found that Holmes had a conflict and granted the State's motion, thereby rejecting Holmes' entry of appearance. The case proceeded to trial and a jury found Defendant guilty of all the charges brought against him: five counts of CSPM, and seven counts of CSCM under the age of thirteen. Thereafter, the district court sentenced Defendant. This appeal followed.

**Discussion**

**{10}** Defendant raises three arguments. First, Defendant contends his convictions should be reversed because he was improperly denied his counsel of choice. Second, Defendant argues that "[d]ue to vindictive sentencing[,] the case should be remanded for resentencing in front of a different judge." Lastly, Defendant claims he "received ineffective assistance of counsel." For the reasons that follow, we are unpersuaded by any of Defendant's contentions on appeal.

## A.    Sixth Amendment Right to Counsel of Choice

## I.    Standard of Review

**{11}**    "[T]he Sixth Amendment guarantees [the] defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989)). But the Sixth Amendment also guarantees representation that is free from conflicts of interest. *See Wood v. Georgia*, 450 U.S. 269-71 (1981). While a defendant can knowingly and intelligently waive conflicts of interest, the district court is allowed "substantial latitude" to refuse such waivers in cases of either actual or potential conflict. *Wheat v. United States*, 486 U.S. 153, 163 (1988). Thus, a defendant cannot insist on representation by an attorney who has a conflict of interest that would undermine public confidence in the impartiality and fairness of the judicial process. *See Gonzalez-Lopez*, 548 U.S. at 152; *Wheat*, 486 U.S. at 159.

**{12}**    Defendant and the State agree that, although New Mexico has not set out a standard of review for denial of counsel of choice, most appellate courts have reviewed a district court's disqualification of a defense attorney for conflict of interest under an abuse of discretion standard. *See, e.g.*, *United States v. Sanchez Guerrero*, 546 F.3d 328, 332 (5th Cir. 2008); *United States v. Gharbi*, 510 F.3d 550, 553 (5th Cir. 2007); *United States v. Locascio*, 6 F.3d 924, 931 (2nd Cir. 1993); *United States v. Smith*, 995 F.2d 662, 675-76 (7th Cir. 1993); *People v. Watson*, 46 N.E.3d 1057, 1060 (N.Y. 2016); *see also Wheat*, 486 U.S. at 164 (stating that "the [d]istrict [c]ourt's refusal to permit the substitution of counsel . . . was within its discretion and did not violate petitioner's Sixth Amendment rights"). We see no reason to depart from application of this standard here and, thus, will uphold the district court's findings unless they are clearly erroneous, and the court was unreasonable, arbitrary, or unconscionable in its ruling. *See State v. Samora*, 2016-NMSC-031, ¶ 37, 387 P.3d 230 (stating that "[a]n abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case" (internal quotation marks and citation omitted)).

## II.    Preliminary Matters

**{13}**    Defendant raises several choice of counsel arguments on appeal, three of which we dispose of at the outset before turning to the substantive conflict of interest issue presented.

**{14}** First, to the extent Defendant argues "[t]he [S]tate lacked standing to raise the issue of the potential conflict of interest," we disagree. Defendant relies on a number of cases to support his assertion that only a current or former client has standing to move for disqualification of counsel and, therefore, the State has no standing to assert the privilege held by the potential witness. These cases are inapposite and do not involve a defendant's Sixth Amendment right to effective and conflict-free assistance of counsel. Moreover, Defendant fails to cite the plethora of cases directly addressing the issue. In general, these cases have observed that "when the government is aware of a conflict of interest, *it has a duty* to bring it to the court's attention and, if warranted, move for disqualification" of the defendant's counsel. *United States v. Migliaccio*, 34 F.3d 1517, 1528 (10th Cir. 1994) (emphasis added); *United States v. Tatum*, 943 F.2d 370, 379-80 (4th Cir. 1991) (same). As the Tenth Circuit has explained, "[t]he prosecution's duty to alert the court to defense counsel's potential and actual conflicts of interest is rooted not only in the defendant's right to effective and conflict-free representation, but also in the prosecutor's role as an administrator of justice, an advocate, and an officer of the court." *United States v. McKeighan*, 685 F.3d 956, 966 (10th Cir. 2012) (internal quotation marks and citation omitted). Thus, in this case, it was the State's duty to disclose Holmes' potential or actual conflict of interest to facilitate the administration of justice by helping to avoid delays or retrials that could occur if the conflict rendered Holmes' representation ineffective.

**{15}** We note as well that the rationale for imposing such a duty on the State is well founded. A failure to timely raise a conflict of interest could well lead to a reversal of any conviction obtained at trial. Moreover, if the State was to withhold known potential or actual conflicts of interest in Holmes' representation rather than bring it to the district court's attention, the prosecution could gain an unfair tactical advantage by restricting Holmes' effectiveness at trial. *See United States v. Malpiedi*, 62 F.3d 465, 470 n.3 (2d Cir. 1995). Indeed, some federal appellate courts have reversed convictions based on defense counsel's conflicts at trial and chastised the prosecution for knowing about the potential conflicts and not moving for disqualification. *See id.*; *Mannhalt v. Reed*, 847 F.2d 576, 583-84 (9th Cir. 1988); *United States v. Iorizzo*, 786 F.2d 52, 54, 59 (2d Cir. 1986); *see also United States v. Levy*, 25 F.3d 146, 152 (2d Cir. 1994) (noting that the prosecution failed to apprise a reassigned judge of conflict of interest concerns "thereby permitting the [j]udge to walk unwittingly into the 'mine field' "). We conclude that the State had the obligation—and duty—to diligently alert the district court to the conflict of interest arising from Holmes' representation of Defendant and properly did so here.

**{16}** Second, we do not consider Defendant's argument that "[t]he 'law of the case' did not apply and the [district] court judge abused [its] discretion in using it to justify the disqualification of [Defendant]'s chosen attorney." The State did not raise the "law of the case" doctrine in its motion to deny substitution of counsel and/or to disqualify Holmes. Although the prosecutor stated her belief that because Holmes had represented a co-defendant in the past, there was no waiver from the codefendant, and Holmes previously himself raised the fact of his conflict, the presence of a conflict became the law of the case, the district court nowhere entertained that argument or relied upon it in its order granting the motion. In fact, Defendant cites no record evidence for his

assertion that the district court used the law of the case doctrine much less abused its discretion in doing so, and our review of the record discloses none. Accordingly, we do not address it further. *See Murken v. Solv-Ex Corp.*, 2005-NMCA-137, ¶ 14, 138 N.M. 653, 124 P.3d 1192 ("[W]e decline to review . . . arguments to the extent that we would have to comb the record to do so."); *see also Muse v. Muse*, 2009-NMCA-003, ¶ 42, 145 N.M. 451, 200 P.3d 104 ("We are not obligated to search the record on a party's behalf to locate support for propositions a party advances or representations of counsel as to what occurred in the proceedings."); *In re Aaron L.*, 2000-NMCA-024, ¶ 27, 128 N.M. 641, 996 P.2d 431 ("This Court will not consider and counsel should not refer to matters not of record in their briefs.").

**{17}** Third, we do not address Defendant's argument that the State "objected to Mr. Holmes' entry for tactical reasons." We recognize the potential for the State to abuse its powers or to create conflicts of interest to deny a defendant the right to counsel of his choice. However, we conclude that the State did not do so here. Other than a general— and unsupported—assertion that because "Holmes had been successful in litigating [Defendant]'s habeas petition and the [S]tate may have preferred to oppose an overburdened and underpaid public defender rather than a privately retained attorney[,]" Defendant does not point to any specific wrongdoing by the State. And we see nothing in the record to suggest that the State acted improperly in any way by raising the conflict of interest or seeking rejection of Holmes second entry of appearance. The State filed its disclosure of witnesses in Defendant's case listing Mother as a witness on October 12, 2007, a decade before it filed the motion to disqualify. Moreover, the State's motion to disqualify was filed immediately after Holmes filed his entry of appearance and relied, in large measure, on Holmes' earlier motion for withdrawal citing, inter alia, his conflict of interest. As a final matter, we note that this argument was unpreserved below, as Defendant did not raise the issue at any time during the hearing before the district court. *See, e.g., Nance v. L.J. Dolloff Assocs.*, 2006-NMCA-012, ¶ 12, 138 N.M. 851, 126 P.3d 1215 ("[W]e review the case litigated below, not the case that is fleshed out for the first time on appeal." (internal quotation marks and citation omitted)); *Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717 ("To preserve an issue for review on appeal, it must  appear that [the] appellant fairly invoked a ruling of the trial court on the same  grounds argued in the appellate court."). We cannot conclude on this record that the State did anything but act in good faith, that its concerns were authentic, and that it took legitimate steps to resolve those concerns.

### III.    The District Court Did Not Abuse Its Discretion in Disqualifying Holmes

**{18}** As we have noted, immediately after Holmes filed his entry of appearance, the State filed its motion to deny substitution of counsel and/or motion to disqualify Holmes. Holmes did not file a written response to the State's motion. Instead, the district court held a hearing on February 14, 2017, one week before the start of trial, on the State's motion.

**{19}** At the hearing, the district court engaged Holmes in a discussion about his understanding of his obligation to avoid any representation that involved a conflict of

interest and his efforts to comply with that duty. During that exchange, Holmes stated that Defendant's family had initially hired him to file the habeas petition only and they did not hire him to do the underlying trial. Holmes further admitted that the "habeas really didn't involve anything but just listening to the record and the change of plea." When Holmes started to address the issue of the conflict and the "law of the case" argument, the district court interrupted asking, "So there wasn't a conflict? It was just nonsense, or what?" While Holmes contended that "I'm not sure if there is a conflict [of interest]," he nevertheless admitted, "I think the danger is . . . that, I guess on cross-examination if the State truly intends to call [Mother] as a witness . . . the risk would be . . . that my cross-examination might have information that [Mother] told me in confidence." With regard to the issue of waivers, Holmes thought—but could not remember—whether he had a waiver signed by Defendant but conceded that, if there was a conflict, "I believe that has to be waived, certainly by both parties, in writing." Holmes did not argue or have any evidence that Defendant and/or Mother clearly agreed to waive any potential conflict. Nor did he respond to the State's assertion, raised in its motion, that Holmes did not have a waiver from Mother, Mother told the State that she would not waive the conflict, and Holmes was given this information. In sum, Holmes appears to have made no effort to obtain waivers from Defendant and Mother, nor did he say he would seek to do so. Instead, Holmes ended his argument by saying, "Judge, I'll leave it up to Your Honor. At this point, it's kind of tricky. . . . So Judge, we'll leave it up to your discretion at this point but I don't believe, in reviewing the rules, that a conflict really does exist." After hearing the arguments of the parties, the district court ruled for the State, and subsequently entered a written order finding that Holmes had a conflict and therefore, that the State's motion should be granted.

**{20}** In determining whether to disqualify counsel on conflict of interest grounds, the district court need not find an actual, existing conflict of interest. As the Supreme Court stated in *Wheat*, the court

> must recognize a presumption in favor of [the defendant]'s counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the [district] court.

486 U.S at 164. Determining whether such a potential conflict exists is no simple task. "The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials." *Id.* at 162-63.

**{21}** In this case, the district court could have reasonably found at least a serious potential for conflict arising from Holmes' representation of Defendant. Mother had been charged with crimes arising out of the same set of circumstances facing Defendant in his trial. And Holmes had withdrawn from representing Defendant in this case because, Holmes asserted, he had of a conflict of interest based on his past representation of Mother. At the hearing on the State's motion, Holmes acknowledged the "danger" and

"risk" of using confidential information gleaned in his representation of his former client to cross-examine Mother as a witness at Defendant's trial. Notwithstanding this recognition, however, and without any considered explanation, Holmes maintained below that he did not believe a conflict existed. But Holmes offered nothing to establish how the vigorous defense of his current client (Defendant) would not be materially limited by his responsibility to his former client (Mother). Moreover, to the extent that Holmes previously represented Defendant in his habeas petition, Holmes told the district court that his appearance in the case "really didn't involve anything but just listening to the record and the change of plea." Thus, we can conclude that he neither gained nor divulged any confidential information in the course of that representation. And to reiterate, Holmes conceded that if a conflict existed, he would need waivers from both Defendant and Mother, yet he made no effort to proffer waivers from either of them. Nor did he respond to the State's representation that Mother would not waive her conflict and how he might address that circumstance thus leaving the district court unable to consider any possible waivers. We find it difficult to understand why an attorney, under these circumstances, would not make at least some minimal effort to obtain waivers from his former clients. Important as well is that this was not a situation where the district court *removed* Defendant's counsel of choice. Defendant was, and had been, represented by appointed defense counsel who presumably was ready for the upcoming trial. Notably, there was no motion to discontinue that attorney's representation and substitute counsel pending before the court. *See* Rule 5-107(B) ("An attorney who has entered an appearance or who has been appointed by the court *shall* continue such representation until relieved by the court." (emphasis added)).

**{22}** Regardless of whether an actual conflict exists, there is clearly a potential conflict of interest inherent in Holmes' representation of Defendant and his previous client whose criminal cases stemmed from the same set of facts and who was listed as a witness of the State in its case against Defendant, particularly given that Holmes himself had previously asserted a conflict. Based on the above, and given the disruption and delay that would have occurred in this decade-old case that was scheduled for trial in two weeks and likely would have required a continuance, we conclude that there was no abuse of discretion in the district court's disqualification of Holmes.

## B. Defendant Failed to Establish a Presumptive or Actual Vindictiveness Claim

**{23}** Defendant argues that the district court violated his right to due process under both the Federal and State Constitutions by imposing a vindictive sentence because it increased Defendant's sentence following the withdrawal of his plea agreement and after a jury trial. As an initial matter, we note that Defendant failed to preserve or adequately argue in the district court for protections under the New Mexico Constitution, and we therefore limit our analysis to Defendant's claimed right under the United States Constitution. *See State v. Cannon*, 2014-NMCA-058, ¶ 10, 326 P.3d 485 ("This Court does not read [the d]efendant's brief in chief or reply brief as asserting an argument for greater protection under the New Mexico Constitution, and [the d]efendant has made no

attempt to rebut the [prosecution's] contention that this issue was not preserved. We therefore limit our analysis accordingly.").

**{24}** The issue of whether a harsher sentence represents a due process violation is a question of law that we review de novo. *See N.M. Bd. of Veterinary Med. v. Riegger*, 2007-NMSC-044, ¶ 27, 142 N.M. 248, 164 P.3d 947 ("We review questions of constitutional law and constitutional rights, such as due process protections, de novo."). A sentence is unconstitutionally vindictive if it imposes greater punishment because the defendant exercised a constitutional right, such as the right to jury trial or the right to appeal. *See Wasman v. United States*, 468 U.S. 559, 568 (1984). However, in *Alabama v. Smith*, 490 U.S. 794, 795 (1989), the United States Supreme Court held "that no presumption of vindictiveness arises when the first sentence was based upon a guilty plea, and the second sentence follows a trial." The Court in *Smith* noted that a sentencing judge possesses much more relevant sentencing information after trial than is generally available when a defendant pleads guilty. *Id.* at 801. During a trial, "the judge may gather a fuller appreciation of the nature and extent of the crimes charged" and gain "insights into [the defendant's] moral character and suitability for rehabilitation." *Id.* In addition, "after trial, the factors that may have indicated leniency as consideration for the guilty plea are no longer present." *Id.*; *see State v. Sisneros*, 1984-NMSC-085, ¶¶ 19-21, 101 N.M. 679, 687 P.2d 736 (holding that the presumption of vindictiveness was overcome, in part, because the original sentence was based on a guilty plea when the circumstances of the crime were not fully brought before the court, and the subsequent sentence was "based on jury verdicts following a full-scale trial"), *overruled on other grounds by State v. Saavedra*, 1988-NMSC-100, 108 N.M. 38, 766 P.2d 298. In sum, while a criminal defendant "may not be subjected to more severe punishment for exercising his constitutional right to stand trial, the mere imposition of a heavier sentence after a defendant voluntarily rejects a plea bargain does not, without more, invalidate the sentence." *United States v. Morris*, 827 F.2d 1348, 1352 (9th Cir. 1987) (internal quotation marks and citations omitted). When "the record contains statements that give rise to an inference of vindictive sentencing, . . . the record [must] affirmatively show that no improper weight was given to the failure to plead guilty." *Id.* (internal quotation marks and citation omitted).

**{25}** Therefore, it is not reasonable for a reviewing court to presume that a longer sentence imposed after trial was motivated by unconstitutional vindictiveness. Where there is no reasonable likelihood that the sentence is the product of actual vindictiveness on the part of the sentencing authority, the burden is on the defendant to prove actual vindictiveness in the sentencing decision. *Smith*, 490 U.S. at 799. "[T]he mere imposition of a longer sentence than [a] defendant would have received had he pled guilty . . . does not automatically constitute vindictive or retaliatory punishment." *Williams v. Jones*, 231 F. Supp. 2d 586, 599 (E.D. Mich. 2002). "The Supreme Court's plea bargaining decisions make it clear that a state is free to encourage guilty pleas by offering substantial benefits to a defendant, or by threatening an accused with more severe punishment should a negotiated plea be refused." *Id.* Although a defendant is free to accept or reject a plea bargain, once that bargain has been rejected, "the

defendant cannot complain that the denial of the rejected offer constitutes a punishment or is presumptive evidence of judicial vindictiveness." *Id.*

**{26}**  In this case, Defendant initially agreed to plead guilty to three counts of first degree CSPM, and one count of second degree CSCM. The district court sentenced Defendant for these four counts to a total of sixty-nine years of incarceration (three eighteen-year sentences), with portions of it running concurrently, for a total of thirty-six years in prison. After the jury trial, however, Defendant was found guilty of twelve counts of CSPM and CSCM (five counts of CSPM, and seven counts of CSCM). Based on the jury's verdict, the district court sentenced Defendant to ninety-nine years with thirty years suspended, leaving sixty-nine years minus credit for time served. Thus, the question is whether Defendant's sixty-nine year sentence is vindictive because it exceeds the thirty-six year sentence imposed after entry of the plea agreement.

**{27}**  Defendant contends that comments made by the district court after trial demonstrated actual vindictiveness in violation of his due process rights. At the sentencing hearing, the State argued that it was "extremely hard and damaging" for Victim to have to testify so many years after the crimes and that the court "should sentence . . . Defendant to I believe essentially a life sentence." Thereafter, the district court said:

> It's terrible that she had to come back here and testify ten years after the fact and I played a part in that, it is in some great part my fault, because had I properly informed you maybe we wouldn't have ever had to undo your plea and go through this again so I apologize to [Victim] for my failings as a judge and not adequately informing . . . Defendant of the possibility of the mandatory sentences that he faced.

**{28}**  According to Defendant, this "remorse at [the district court's] part in the fiasco . . . demonstrates the vindictiveness of [Defendant's] sentence." We are not persuaded that that the district court's comments above show that the sentence imposed by the judge in this case was based on a desire to punish Defendant for exercising his constitutional right to a trial. Defendant asks us to consider the comment in isolation. We decline to do so. Heard in its entirety, during the sentencing phase, the judge gave a lengthy and reasoned explanation for the sentence he was about to impose and, in his comments above, was merely acknowledging the burden on Victim for having to testify so many years after the crimes. In addition to those comments, the judge mentioned the facts of the case, including the nature of the crimes involved, the respective ages of Defendant and Victim, and the nonconsensual nature of the sexual encounters. The judge then properly informed Defendant that he was entitled to appeal and the number of days within which he would have to file his notice of appeal. Further, the judge never stated or implied that Defendant's sentence was based on his failure to accept the plea offer ten years earlier. Indeed, at the hearing on Defendant's habeas petition, the district court took great care to advise defense counsel that if it were to set aside the plea, Defendant "would be facing twelve counts that total . . . 183 years." And counsel responded that he had "explained that to [Defendant]," and Defendant understood that

setting aside the plea meant "a trial, conviction on all counts, and perhaps a new sentencing."

**{29}**   Defendant has not offered any evidence of vindictive sentencing beyond the fact of a discrepancy between the plea bargain offered to him and the actual sentence he received after a jury trial convicting him of all twelve counts. Under the circumstances, the sentence was well within the bounds of the 183 years the district court said Defendant would be facing by going to trial. In sum, Defendant has failed to show that the sentence imposed by the district court in this case was based on a desire to punish Defendant for exercising his constitutional right to a trial.

**C.     Defendant Did Not Receive Ineffective Assistance of Counsel**

**{30}**   "The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees [defendants in criminal proceedings] the right to . . . effective assistance of counsel." *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 16, 130 N.M. 179, 21 P.3d 1032 (internal quotation marks and citation omitted). We review claims of ineffective assistance of counsel de novo. *Duncan v. Kerby*, 1993-NMSC-011, ¶ 7, 115 N.M. 344, 851 P.2d 466.

**{31}**   On appeal, Defendant contends that the docketing statement "lists a number of errors that can be cumulatively regarded as ineffective assistance of counsel" and notes that his trial counsel filed a number of untimely motions on the eve of trial. However, Defendant concedes that the record does not demonstrate the reason for these late filings and that this issue "would better be argued in a habeas corpus proceeding." We agree and suggest that if Defendant wishes to pursue his ineffective assistance of counsel claim, he may proceed with a petition for habeas corpus, pursuant to Rule 5-802 NMRA, following final mandate from this Court. *See Duncan*, 1993-NMSC-011, ¶ 7 (expressing a preference that ineffective assistance of counsel claims be adjudicated in habeas corpus proceedings, rather than on direct appeal); *State v. Herrera*, 2001-NMCA-073, ¶ 37, 131 N.M. 22, 33 P.3d 22 (same).

**Conclusion**

**{32}**   For the foregoing reasons, we affirm.

**{33}   IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**BRIANA H. ZAMORA, Judge**