This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: January 28, 2021**

**No. S-1-SC-37313**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**TONY GALLEGOS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**James Lawrence Sanchez, District Judge**

L. Helen Bennett, P.C.
Linda Helen Bennett
Albuquerque, NM

Amavalise F. Jaramillo
Tome, NM

Bennett J. Baur, Chief Public Defender
C. David Henderson, Appellate Defender
Santa Fe, NM

for Appellant

Hector H. Balderas, Attorney General
Walter M. Hart III, Assistant Attorney General
Santa Fe, NM

for Appellee

### DECISION

**BACON, Justice.**

**{1}**     Defendant Tony Gallegos appeals his life sentence directly to this Court pursuant to Rule 12-102(A)(1) NMRA, raising two issues: (1) ineffective assistance of counsel stemming from his attorney's potential conflict of interest, and (2) sufficiency of the evidence.  For the ineffective assistance of counsel issue, Defendant argues that his attorney, Amavalise Jaramillo, had an actual conflict of interest created by Jaramillo's previous unrelated representation of the State's key witness in this case, Cody Cruz.  This conflict, according to Defendant, resulted in a curtailed cross-examination of Cruz, whose testimony was crucial to the State's theory of the case.  The sufficiency of the evidence argument, raised pursuant to *State v. Franklin* and *State v. Boyer*,[1] asserts that Cruz was not a reliable witness, and that his allegedly unreliable testimony cannot support Defendant's convictions.

**{2}**     We affirm Defendant's convictions.[2]  As to Defendant's ineffective assistance of counsel claim, we find the record wanting for information to support Defendant's argument.  While briefing certainly illuminates a *potential* conflict of interest, the record lacks critical facts to establish an actual conflict of interest was created by Jaramillo's representation of Cruz and subsequent representation of Defendant.  We stress, however, that Defendant's ineffective assistance of counsel claim is more appropriately suited for a habeas corpus petition, wherein Defendant can develop a factual record regarding Jaramillo's potential conflict of interest.

## I.     RELEVANT BACKGROUND

## A.     Factual Background

**{3}**     On the afternoon of April 24, 2014, Defendant, Cruz, and Defendant's cousin, Phillip Chavira, drove to the Los Lunas residence of Patrick Chavez (Victim).  The three men planned to steal marijuana and other valuables from Victim's house.  According to Cruz, the original plan was to "go over [to Victim's house] beforehand and see if anybody was home.  And if nobody was at the residence, then we could break in and take the items or any valuables."  When the three men arrived at Victim's residence, they noticed apparent signs that people were inside the house.  Despite indications the house was occupied, Defendant disregarded the original plan because "he didn't want to go out there for nothing."  Defendant's new plan was that Cruz and Chavira were to wait outside the house while Defendant entered the house and subdued any individuals inside; once Defendant accomplished this, Cruz would enter the house and steal items.  Cruz protested, raising concerns about the house's occupants, but Defendant nevertheless proceeded.

**{4}**     Defendant casually approached the front door of the house, knocked, and called out Victim's name.  Victim and Victim's brother were inside the house.  Victim let Defendant inside the house.  Once inside, Defendant drew a handgun and demanded

---

1 *See State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982; *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1.

2 Because the record does not support Defendant's factual assertions and because the case can otherwise be disposed of by established New Mexico law, we exercise our discretion under Rule 12-405(B)(1)-(2) NMRA and issue this non-precedential decision affirming Defendant's convictions.

that Victim hand over marijuana. Victim responded by reaching for the handgun, and a struggle for the weapon ensued. Defendant shot Victim multiple times in the torso and legs, killing him.

**{5}** Upon hearing the shooting, Cruz, who was outside the house, fled on foot down the street. Eventually, Defendant and Chavira, who were driving, caught up to Cruz and ordered him to get into their vehicle. Cruz and Chavira asked Defendant if he had shot Victim, to which Defendant responded affirmatively, but stated he was unsure if Victim was dead (which, in fact, he was).

## B.     Trial

**{6}** Defendant's three-day trial began on December 5, 2017. The State called eleven witnesses. Of those eleven witnesses, eight represented either law enforcement or medical expertise. One witness was a friend of Defendant who testified that Defendant had admitted to shooting Victim in the leg. Two of the witnesses, Cruz and Victim's brother, were present at the time of the shooting. While Victim's brother was in the house at the time of the shooting, he testified he was hiding at the time and could only provide a rough description of the shooter. Cruz, however, identified Defendant as the shooter and provided significant testimony incriminating Defendant's role in the shooting.

**{7}** In addition to testimonial evidence, the State presented evidence of Defendant's DNA on a fencepost outside of Victim's house. While bullets recovered from the scene were determined to be from the same firearm, the firearm itself was not found. Cruz's testimony, therefore, was critical in proving the State's theory that Defendant had shot Victim.

**{8}** The jury convicted Defendant of: (1) accessory to felony murder in the first degree, contrary to NMSA 1978, Section 30-2-1(A)(2) (1994) and NMSA 1978, Section 30-1-13 (1972); (2) attempted robbery, contrary to NMSA 1978, Section 30-16-2 (1973) and NMSA 1978, Section 30-28-1 (1963); and (3) conspiracy to commit armed robbery, contrary to Section 30-16-2 and NMSA 1978, 30-28-2 (1979). The district court entered judgment and sentenced Defendant to life imprisonment for the accessory to murder conviction.

## C.     What the Record Establishes Regarding Jaramillo's Representation of Cruz

**{9}** Initially, Public Defender Michael Rosenfield represented Defendant. On December 2, 2015, however, Jaramillo moved to substitute as private counsel for Defendant. That same motion noted Rosenfield's objection to Jaramillo representing Defendant. Specifically, Rosenfield opposed the motion because he believed Jaramillo's representation of Defendant would be a conflict with Jaramillo's previous representation of Cruz.

**{10}** The district court held a hearing on the matter on January 22, 2016. During the hearing, Rosenfield stated his office's investigator had learned of Jaramillo's previous

representation of Cruz. The investigator had purportedly learned that "Cruz's father told [the investigator] that Mr. Cruz went to talk to Mr. Jaramillo about his involvement as a State witness in the case against [Defendant]." Rosenfield voiced his concerns that Jaramillo might have a conflict of interest between protecting Cruz's interests and cross-examining him at trial.

**{11}** Jaramillo responded by stating there was not a conflict because there was no adverse representation to Defendant or Cruz, nor was there a violation of Rule 16-107 NMRA. Jaramillo noted his representation of Cruz was for a minor matter where Cruz had allegedly stolen property from a local middle school. Jaramillo assured the district court that Cruz's case was over. Further, Jaramillo acknowledged that he had interviewed Cruz regarding the shooting of Victim, but that he had told Cruz that he was "interviewing him as [Defendant's] lawyer, not as [Cruz's] lawyer." The State did not take a position on the matter.

**{12}** The district court, having considered Rosenfield's statements and Jaramillo's assessment, concluded that Jaramillo did not have a conflict. The district court did, however, note its concerns about the appearance of impropriety. Nevertheless, the district court relied on Jaramillo's judgment that there was not a conflict, and reminded Jaramillo of his "burden as an officer of the court to make sure [he did not] have a conflict." The district court therefore allowed Jaramillo to substitute as counsel.

## II.    DISCUSSION

### A.    The Record Does Not Support Defendant's Claim for Ineffective Assistance of Counsel; His Claim is Better Suited for a Habeas Corpus Petition

### 1.    Standard of review

**{13}** Claims of ineffective assistance of counsel are reviewed de novo. *See, e.g.*, *State v. Mosley*, 2014-NMCA-094, ¶ 18, 335 P.3d 244. A challenge to a district court's grant of substitution of counsel is reviewed for an abuse of discretion. *See State v. Dyke*, 2020-NMCA-013, ¶ 12, 456 P.3d 1125.

### 2.    Relevant law regarding ineffective assistance of counsel due to a conflict

**{14}** A criminal defendant charged with a felony has a Sixth Amendment right to have the effective assistance of an attorney. *Strickland v. Washington*, 466 U.S. 668, 692 (1984), *superseded on other grounds by* Antiterrorism and Effective Death Penalty Act of 1996, PL 104-132, 110 Stat. 1214 (1996); *State v. Padilla*, 2002-NMSC-011, ¶ 11, 132 N.M. 247, 46 P.3d 1247. Subsumed within the Sixth Amendment's right to counsel is the guarantee that such counsel is free from conflict. *State v. Sosa*, 1997-NMSC-032, ¶ 20, 123 N.M. 564, 943 P.2d 1017 ("The right to effective assistance of counsel free from conflicts of interest is guaranteed by the Sixth Amendment of the United States Constitution."), *abrogated on other grounds by State v. Porter*, 2020-NMSC-020, 476 P.3d 1201; *State v. Martinez*, 2001-NMCA-059, ¶ 24, 130 N.M. 744, 31 P.3d 1018 (noting the Sixth Amendment guarantees "the right to counsel's undivided loyalty"). "It

is well established in New Mexico that trial counsel representing a defendant has a duty to avoid a conflict of interest." *State v. Santillanes*, 1990-NMCA-035, ¶ 6, 109 N.M. 781, 790 P.2d 1062.

**{15}** Generally, a prima facie case of ineffective assistance of counsel requires a defendant to show that their attorney's performance was deficient and that the deficient performance prejudiced the defense. *See, e.g.*, *State v. Sloan*, 2019-NMSC-019, ¶ 33, 453 P.3d 401. The analysis for conflict-based ineffective assistance of counsel claims, however, differs from the more typical ineffective assistance of counsel claim. *See Rael v. Blair*, 2007-NMSC-006, ¶ 10, 141 N.M. 232, 153 P.3d 657. A conflict-based claim requires that "a defendant demonstrates that an actual conflict of interest undermined counsel's loyalty." *Martinez*, 2001-NMCA-059, ¶ 24. Once an actual conflict is established, "prejudice is presumed." *Id.* (quoting *Strickland*, 466 U.S. at 692); *see also Santillanes*, 1990-NMCA-035, ¶ 7 ("When ineffective assistance of counsel is based on a conflict of interest, prejudice is presumed and need not be proved.").

**{16}** Prejudice, however, is not automatically presumed when there is a *potential* conflict. *See Rael*, 2007-NMSC-059, ¶ 11; *see also Churchman v. Dorsey*, 1996-NMSC-033, ¶ 12, 122 N.M. 11, 919 P.2d 1076 ("[T]he mere *possibility* of conflict is insufficient to support a claim of ineffective assistance of counsel."). Instead, the defendant must demonstrate that an actual conflict exists. This Court has stated that a defendant

> must show that while counsel represented [the defendant] there was an ongoing professional relationship between [the witness at issue] and defense counsel that requires the protection of attorney-client privilege. Further, Defendant must show that counsel's representation of [the witness] involved a matter relevant to [the defendant's] trial. If there is significant relevance, a per se conflict of interest can be identified.

*Rael*, 2007-NMSC-059, ¶ 21.

**{17}** Relevant to the matter at hand, this Court has stated that an actual conflict of interest occurs "when counsel represents two clients with divergent interests in the same matter." *State v. Joanna V.*, 2004-NMSC-024, ¶ 6, 136 N.M. 40, 94 P.3d 783. Moreover, an actual conflict can be found when a plausible defense was not pursued because of the interests of another party. *See Santillanes*, 1990-NMCA-035, ¶ 7; *cf.* Rule 16-107(A)(2) (stating a conflict exists if "there is a significant risk that the representation of [a client] will be materially limited by the lawyer's responsibilities to . . . a former client"). For example, New Mexico courts have found an actual conflict exists when counsel states on the record certain defenses were not pursued because of a duty owed to a third party, *Dyke*, 2020-NMCA-013, ¶¶ 19-22; *Santillanes*, 1990-NMCA-035, ¶¶ 1, 16, when an attorney previously represented a key prosecution witness in a matter substantially related to the defendant's case, *Rael*, 2007-NMSC-006, ¶ 25, or when an attorney was himself a suspect in the crime for which the defendant was being charged, *Martinez*, 2001-NMCA-059, ¶¶ 31-36. But the law is clear: an actual conflict is not merely "the possibility of conflict." *State ex rel. Children, Youth & Families Dep't v.*

*Tammy S.*, 1999-NMCA-009, ¶ 21, 126 N.M. 664, 974 P.2d 158; *see also Rael*, 2007-NMSC-059, ¶ 11; *Churchman*, 1996-NMSC-033, ¶ 12.

**{18}** Thus, under established New Mexico law, a defendant receives ineffective assistance of counsel when their lawyer has an "actual conflict which adversely affected the defense lawyer's performance.  Absent an actual conflict, the defendant has no claim."  *State v. Case*, 1984-NMSC-012, ¶ 9, 100 N.M. 714, 676 P.2d 241.

**3.     Analysis**

**{19}** Defendant asserts two reasons for reversal based on ineffective assistance of counsel: (1) Jaramillo's representation of Defendant after representing Cruz created an actual conflict of interest, and (2) the district court failed to make sufficient inquiry into the potential conflict.  We address each in turn.

**a.     The record does not establish an actual conflict**

**{20}** Defendant's conflict-based claim of ineffective assistance of counsel requires Defendant to demonstrate that Jaramillo had an actual conflict of interest stemming from his previous representation of Cruz.  *See, e.g.*, *Rael*, 2007-NMSC-006, ¶¶ 11-12; *Martinez*, 2001-NMCA-059, ¶ 24. Defendant argues that, "The *potential* for conflict between Defendant and Cruz existed from the time Cruz implicated [Defendant] in the shooting that resulted in the charges only against [Defendant]." (Emphasis added.) Defendant describes the conflict as Defendant's "interest was in demonstrating his innocence.  Cruz' interests lay in maintaining that [Defendant], not Cruz, was the perpetrator[.]"  Defendant's summation of Jaramillo's conflict presupposes two facts unsupported by the record.  First, it assumes that Jaramillo learned attorney-client information from Cruz that was relevant to the instant matter.  Second, it draws a further inference from the first assumption to conclude whatever Jaramillo might have learned created an actual conflict of interest.

**{21}** As to the assumption that Jaramillo learned information from Cruz, the thin record indicates that Jaramillo did not gain relevant attorney-client information from Cruz.  For example, when the district court asked Jaramillo if he had learned attorney-client information about the instant case through Cruz, Jaramillo responded, "I didn't learn anything from [Cruz] when I was his attorney."  Jaramillo stated he had interviewed Cruz about the shooting, but Jaramillo assured the court that during the interview he informed Cruz that he was Defendant's attorney, not Cruz's.  Moreover, Cruz himself acknowledged this interview and informed the court that he did not divulge any information to Jaramillo that he had not already provided to police.

**{22}** The only identifiable aspect of the record that lends support to the notion Jaramillo learned attorney-client information stems from statements made by Rosenfield, Defendant's previous publicly-appointed attorney.  Rosenfield informed the district court that he believed Jaramillo might have a conflict due to his previous representation of Cruz.  Rosenfield's contention, however, was grounded in information relayed to him by his investigator, who had in turn received it from Cruz's father, who in

turn reported that he believed Cruz had spoken to Jaramillo about the shooting. Jaramillo offered his clarification on this by informing the court he had interviewed Cruz while serving as Defendant's attorney, but the conversation was held after Cruz's case was over. Jaramillo further informed the court that his representation of Cruz was on a previous and minor criminal matter, wholly unrelated to the shooting.

**{23}** There is no support in the record regarding the further inference that Jaramillo gained information adverse to Defendant's defense. Defendant contends that his defense was undermined by Jaramillo's cross-examination of Cruz because of Jaramillo's ongoing duty of loyalty to Cruz. The record does not indicate a curtailed cross-examination. Jaramillo conducted a lengthy examination of Cruz that pursued multiple manners of impeachment, highlighted motivations to lie, and examined inconsistent statements. Furthermore, in closing argument, Jaramillo informed the jury on multiple occasions that Cruz was the one who shot Victim.

**{24}** Lastly, Defendant argues that a conflict was created because Cruz's "ability to stay on [pre-prosecution diversion] for the charges on which Jaramillo had previously represented him were at stake." As the State points out, there is absolutely no factual support for this argument in the record. *See State v. Clifford*, 1994-NMSC-048, ¶ 19, 117 N.M. 508, 873 P.2d 254 (informing counsel that we will not research and develop arguments where they have failed to do so).

**{25}** The record does not establish that an actual conflict existed. There is no support in the record that Jaramillo had to protect divergent interests for Cruz and Defendant, *see Joanna V.*, 2004-NMSC-024, ¶ 6, or that a plausible defense was avoided due to a conflict, *Santillanes*, 1990-NMCA-035, ¶ 7. To the contrary, Jaramillo argued to the jury that Cruz was the shooter. Moreover, the record fails to establish any significant relevance between the unrelated matter in which Jaramillo represented Cruz and the matter at bar. *See Rael*, 2007-NMSC-059, ¶ 21.

**{26}** Without a showing of actual conflict, prejudice is not presumed and Defendant cannot establish a prima facie claim of ineffective assistance of counsel. *See, e.g.*, *id.* ¶ 24; *Santillanes*, 1990-NMCA-035, ¶ 7; *Martinez*, 2001-NMCA-059, ¶ 24. In light of the lacking record, Defendant's ineffective assistance of counsel claim fails and does not warrant reversal. *See Case*, 1984-NMSC-012, ¶ 9 ("Absent an actual conflict, the defendant has no claim."). Defendant's claim, however, may be pursued through a habeas corpus proceeding. *See State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61 ("If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition[.]")

### b.    There is no error regarding the district court's inquiry into the conflict

**{27}** Defendant also argues that the proper inquiry was not conducted by the district court. It is not particularly clear what Defendant means by this argument, which is obfuscated by the lack of citation to any authority except for a passing reference to Rule 16-109 NMRA, a rule of professional conduct. A fair reading of the argument is that

Defendant contends the district court erred in allowing Jaramillo to substitute as counsel for Defendant. Specifically, Defendant argues that the district court should have directly provided Defendant with information regarding Jaramillo's potential conflict. Because Defendant is challenging the district court's decision to allow Jaramillo to substitute as counsel, we conclude that his argument is tantamount to challenging a district court's disqualification of counsel, which is reviewed for abuse of discretion. Therefore, we review this argument for abuse of discretion. *See Dyke,* 2020-NMCA-013, ¶ 12.

**{28}** "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. "We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Samora,* 2016-NMSC-031, ¶ 37, 387 P.3d 230 (internal quotation marks and citation omitted).

**{29}** The district court inquired into the potential conflict at the January 22, 2016, hearing. At that hearing, the district court heard from Jaramillo that he had represented Cruz on a previous, unrelated criminal matter. Jaramillo assured the district court that there was not a conflict. Given these assurances by Jaramillo, the fact that Cruz's case was unrelated and reportedly done, and the lack of opposition by the State, the district court did not abuse its discretion in allowing Jaramillo to substitute as counsel. *See Dyke,* 2020-NMCA-013*,* ¶ 20 ("Determining whether such a potential conflict exists is no simple task. 'The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials.'" (quoting *Wheat v. United States,* 486 U.S. 153, 162-63 (1988)).

**{30}** Defendant claims the district court should have supplied Defendant information about Jaramillo's potential conflict. Specifically, Defendant contends the court should have given him information to make a knowing and voluntary waiver of his right to conflict-free counsel. Defendant does not provide authority to support this proposition. *See Clifford,* 1994-NMSC-048, ¶ 19. Nor does Defendant articulate why a district court has an obligation to warn criminal defendants of the dangers of conflicted counsel when the court does not believe there is a conflict. *See id.* Relatedly, a district court must hold a hearing if a party files a motion to disqualify an adverse party's counsel, which would necessarily entail the trial court inquiring into waiver of conflicts. *See Living Cross Ambulance Serv., Inc. v. N.M. Pub. Regulation Comm'n*, 2014-NMSC-036, ¶ 14, 338 P.3d 1258; *Roy D. Mercer, LLC v. Reynolds*, 2013-NMSC-002, ¶¶ 43-44, 292 P.3d 466. In this case, however, Defendant's former publicly-appointed attorney notified the district court of a potential conflict; the State raised no opposition to Jaramillo serving as counsel. The district court, finding no basis for a conflict, did not inquire further into the matter.

## B.   Sufficiency of the Evidence

**{31}** Pursuant to *Franklin* and *Boyer*, Defendant contends that because "the bulk of the evidence against [Defendant] was obtained through the testimony of Cruz, who admitted to lying to the investigating officers during their investigation of the crime, the credible evidence at trial simply does not rise to the level of substantial enough to avoid

a reasonable doubt." Defendant's argument is premised on this Court determining Cruz was an unreliable witness. The test for sufficiency of the evidence is well established.

> We review whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction. Evidence is viewed in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict. In particular, New Mexico appellate courts *will not invade the jury's province as fact-finder by second guessing the jury's decision concerning the credibility of witnesses*, reweighing the evidence, or substituting its judgment for that of the jury. So long as a rational jury could have found beyond a reasonable doubt the essential facts required for a conviction, we will not upset a jury's conclusions.

*State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (emphasis added) (brackets omitted) (internal quotation marks and citations omitted).

{32}    Defendant asks us to conclude that Cruz's testimony is unreliable—a task we have expressly stated we will not do. *Id.* (stating New Mexico appellate courts will not second-guess the jury's consideration of a witness' credibility). Cruz did in fact provide an inconsistent narrative of events when first interviewed by police. He initially stated that he was not at the scene of the shooting and implicated another suspect. Cruz acknowledged as much during direct examination, cross-examination, and redirect. After the initial statements, however, Cruz maintained a largely consistent account of the shooting, which he testified to at trial (and is recounted above). During cross-examination, defense counsel played a video-recorded conversation of Cruz's inconsistent statements in open court. Jaramillo vigorously cross-examined Cruz about the inconsistencies, using the video-recorded conversation to highlight the different accounts initially given to law enforcement.

{33}    The jury heard Cruz's account of the shooting and was aware of Cruz's initial inconsistent statements. Indeed, Jaramillo placed significant emphasis on Cruz's inconsistent accounts during cross-examination, and, in closing, referred to Cruz as a compulsive liar who had "no credibility in this matter at all." Further, DNA evidence placed Defendant at the scene of the shooting, and a friend of Defendant testified that Defendant admitted to shooting Victim in the leg. Having heard and weighed this evidence, the jury found Defendant guilty on the counts referenced above. Substantial evidence supports the guilty verdicts reached by the jury. *See id.*; *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829; *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314.

## III.    CONCLUSION

{34}    We affirm Defendant's convictions. The record in this matter cannot support Defendant's claim for ineffective assistance of counsel; this claim is better suited for a

habeas corpus proceeding so that a record may be more fully developed.  Additionally, sufficient evidence supports Defendant's convictions.

**{35}   IT IS SO ORDERED.**

**C. SHANNON BACON, Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Chief Justice**

**BARBARA J. VIGIL, Justice**

**DAVID K. THOMSON, Justice**